602 A.2d 1220

**In re CRIMINAL INVESTIGATION NO. 1/242Q.**

**No. 72, Sept. Term, 1991.**

Court of Appeals of Maryland.

March 13, 1992.

Motion for Reconsideration Denied April 23, 1992.

2

Karen J. Kruger, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellant.

William B. Moffitt (M. Christina Gutierrez, Moffitt, Zwerling & Kemler, P.C., all on brief), Alexandria, Va., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

In 1990, the Office of the Attorney General of Maryland began an investigation of known or suspected narcotics traffickers for violations of the state income tax laws. To establish the income of these individuals investigators use the "net worth" method of accounting whereby the State seeks to prove unreported income by documenting large expenditures of money. One such expenditure is for attorney's fees.

Criminal Investigation No. 1/242Q focused on R.A. and D.B.[1] In an effort to establish net worth and uncover assets purchased with suspected narcotics profits, the Grand Jury for Anne Arundel County issued a number of subpoenas duces tecum for records of expenditures of money by R.A. and D.B. One of these was directed to William H. Murphy, Jr. Mr. Murphy is an attorney who had represented R.A. when he pled guilty to a narcotics charge and had at the same time represented D.B. in a related forfeiture proceeding; he does not currently represent R.A. or D.B. The subpoena ordered Mr. Murphy to produce all of his records reflecting payment for legal services rendered to R.A. and D.B. Mr. Murphy filed a motion to quash the subpoena claiming that the information was confidential and privileged. The motion to quash was granted by Judge

---

1. The identities of the targets of the investigation are withheld pursuant to Maryland Rule 8-123(c).

**4**

Bruce C. Williams of the Circuit Court for Anne Arundel County. Judge Williams recognized that generally the attorney-client privilege does not protect fee information, but he determined that the subpoena should be quashed because the Maryland Rules of Professional Conduct have "enlarged the general principle of confidentiality." The State, on behalf of the Grand Jury, filed an appeal, and this Court granted certiorari prior to the case being heard by the Court of Special Appeals.

■ The lower court relied on Rule 1.6 of the Model Rules of Professional Conduct.[2] These Rules were adopted by the House of Delegates of the American Bar Association on August 2, 1983, and with some modifications, by this Court of Appeals on January 1, 1987. The Rules provide ethical guidelines for lawyers. We do not agree with the trial judge that the Rules were intended to expand the attorney-client privilege. In fact under the heading "Scope," the prefatory material to the Rules explicitly states: "Moreover, *these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege.*" *Id.* at 489 (emphasis added).

---

2. Rule 1.6 provides:
"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
  (1) to prevent the client from committing a criminal or fraudulent act that the lawyer believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interests or property of another;
  (2) to rectify the consequences of a client's criminal or fraudulent act in the furtherance of which the lawyer's services were used;
  (3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceedings concerning the lawyer's representation of the client.
  (4) to comply with these Rules, a court order or other law."

The Comment to Rule 1.6 explains the relationship between the "rule of confidentiality" and the attorney-client privilege.

"The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations *other than those where evidence is sought from the lawyer through compulsion of law.*" (Emphasis added).

*Id.* at 500. Thus, the rule of confidentiality is broader than the attorney-client privilege. Rule 1.6 applies to confidential communications between a client and an attorney in all situations *except* where the "evidence is sought from the lawyer through compulsion of law." In the latter situation, only the attorney-client privilege, not the broader rule of confidentiality, protects against disclosure. *See* Geoffrey C. Hazard, *An Historical Perspective on the Attorney–Client Privilege,* 66 Cal.L.Rev. 1061 (1978). The Comment to Rule 1.6 further defines the obligations of an attorney when evidence is sought from the lawyer through compulsion of law.

"The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, Rule 1.6(a) requires the lawyer to invoke the privilege *when it is applicable.*" (Emphasis added).

*Id.* at 502. The Comment to Rule 1.6 states "[i]n addition to these provisions, a lawyer may be obligated or permitted *by other provisions of the law* to give information about a client." *Id.* (Emphasis added). Finally, it is perhaps noteworthy that the rule of confidentiality has many exceptions; for example, attorneys are permitted to breach confidentiality by filing suit and testifying in order to collect unpaid fees. Rule 1.6(b)(3). For the reasons indicated, disclosure in the instant case is governed by the attorney-client privi-

lege[3] rather than the Rules of Professional Conduct.

■ Murphy alleges in his motion to quash the subpoena duces tecum that "[i]t was explicitly agreed and understood" between the clients and him that all information about fees "would be personal, privileged, and confidential because of, among other things, the growing practice of prosecutors nationwide to use such information to establish violations of the narcotics laws, financial reporting laws, money laundering laws, and income tax laws...." It is reasonable to assume that some clients would want the fee arrangement with their attorney to be kept confidential; therefore, a fee arrangement should not be freely disclosed by an attorney. But whether a fee arrangement is protected from disclosure in "judicial proceedings" is a different matter, which is governed by the attorney-client privilege and not by the Rules of Professional Conduct. The subjective intent or wishes of the parties cannot create a privilege where none exists. Even though the clients wish the fee information to be kept confidential, this is but a threshold requirement, and we still must determine whether it is privileged. Our inquiry, therefore, is not whether the broader rules of confidentiality protect the fee information sought in the instant case, but whether the narrower attorney-client privilege protects the information.

We must first note that we are dealing here with a request to disclose the amount of the fee paid by specified clients. We are not dealing with the situation where the lawyer is asked to disclose the names of, and/or the amounts paid by, all clients who paid fees in a particular manner (*e.g.,* by cash) or who paid fees in excess of a specified amount.[4]

---

**3.** The attorney-client privilege is a common law privilege now set forth in Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 9–108.

**4.** *See, e.g.,* 26 U.S.C. § 6050I (1988) which requires that lawyers, as well as other trades, businesses, professions, etc., disclose the names of everyone who paid "cash" fees in excess of $10,000.

The overwhelming weight of authority holds that the attorney-client privilege is generally not violated by requiring disclosure of the payment of attorney's fees and expenses. "Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating." *In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983). *See also In re Grand Jury Matter*, 926 F.2d 348 (4th Cir.1991); *In re Grand Jury Proceedings 88–9 (MIA)*, 899 F.2d 1039 (11th Cir.1990); *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238 (2d Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).

There are good reasons why fee arrangements should not generally be protected by the attorney-client privilege. Payment of a fee is a normal and expected incident of the relationship, and when a fee is negotiated, the attorney and client are to some extent involved in an arm's-length commercial transaction. For the most part, fee arrangements are collateral to, not an integral part of, the fiduciary relationship. Disclosure of the fee should not chill the attorney-client relationship significantly more than the act of requiring payment of the fee.

Courts have articulated a few "exceptions" to the general rule that the attorney-client privilege does not prevent disclosure of client identity and/or fee information. Some of the "exceptions" are ill-defined and overlapping.

Many courts have articulated a "legal advice" exception, which would apply when "disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case." *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach)*, 695 F.2d 363, 365 (9th Cir.1982). *See also In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1488–89 (10th Cir.1990); *In re Sealed Case*, 877 F.2d 976, 979–80 (D.C.Cir.1989). The seminal case on the legal advice exception is *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960). In *Baird,* the Inter-

nal Revenue Service (IRS) received a letter from an attorney stating that an enclosed check in the amount of $12,-706.85 was being tendered for additional taxes owed by undisclosed taxpayers. When the IRS subpoenaed the attorney in an effort to learn the identities of the delinquent taxpayers, the attorney refused to divulge any names, citing the attorney-client privilege. The Ninth Circuit, applying California law, upheld the privilege because disclosing the clients' names would amount to an acknowledgment of guilt by the clients of the very matter for which legal advice was sought.

■ The legal advice exception is not applicable if legal representation is secured in furtherance of continuing illegal activity. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 452 (6th Cir.1983), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach),* 695 F.2d at 365 n. 1; *Matter of Walsh,* 623 F.2d 489, 495 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). Clearly the instant case does not fit within the "legal advice" exception. The criminal charges and forfeiture case for which Mr. Murphy was retained have been terminated. The requested information is for a separate tax fraud investigation. R.A. and D.B. are not being represented by Mr. Murphy in the tax fraud matters. Although both investigations may have resulted from the defendants' illegal drug operation, counsel was obviously retained to represent R.A. and D.B. in court on the criminal charges and in the forfeiture but not to give legal advice on the operation of a drug business or to give tax advice.

A second perhaps overlapping exception has been called the "last link" exception. The courts that have applied it have generally done so where the client's identity is sought. Courts have articulated this exception in various ways. The Fifth Circuit, in *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026 (5th Cir.1982) *(en banc),* has defined the last link exception as

"one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment."

*Id.* at 1027. This exception would not protect the disclosure in the instant case because the clients' identities are known and furnishing that information would not supply the "last link" leading to indictment. We should also note that the last link exception has been expressly rejected by at least one federal circuit. *See, e.g., In re Grand Jury Investigation No. 83-2-35,* 723 F.2d at 454. It also has been implicitly rejected in at least three other circuits. *In re Grand Jury Subpoenas,* 906 F.2d 1485, 1490 (10th Cir.1990), citing *In re Shargel,* 742 F.2d 61 (2d Cir.1984); *United States v. Liebman,* 742 F.2d 807, 810 n. 2 (3d Cir.1984); and *In re Osterhoudt,* 722 F.2d 591, 593 (9th Cir.1983).

█ The third exception, which seems to be articulated with increasing frequency, at least in federal courts, is the "communication" exception. This exception applies when "disclosure of the client's identity or the existence of a fee arrangement would reveal information that is tantamount to a confidential professional communication." *See Tornay v. United States,* 840 F.2d 1424, 1428 (9th Cir.1988). In *United States v. Liebman, supra,* the Internal Revenue Service sought to compel an attorney to reveal the names of all clients to whom the attorney had given advice regarding the deductibility of certain fees. The court upheld the privilege claim because revealing the names would be tantamount to disclosing a confidential communication. In *United States v. Jeffers,* the Seventh Circuit stated:

"The privilege may be recognized when so much of the actual communication has already been disclosed [not necessarily by the attorney, but by independent sources as well] that identification of the client [or of fees paid] amounts to disclosure of a confidential communication." (Alteration in original).

532 F.2d 1101, 1115 (7th Cir.1976) (quoting *NLRB v. Harvey,* 349 F.2d 900, 905 (4th Cir.1965)), *vacated in part on*

*other grounds,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). The communication exception analysis seems to be the "current favorite," at least in federal courts as eight circuits now seem to utilize this approach. Steven Goode, *Identity, Fees, and the Attorney–Client Privilege,* 59 Geo. Wash.L.Rev. 307, at 326 & n. 138 (1991). Revealing the fee information in the instant case would not be barred by the communication exception to the general rule requiring disclosure of fee information. First, payment of a fee was a nonassertive act which was not intended to communicate information.[5] Second, disclosure of the amount and method of payment of a fee in the instant case reveals nothing about the advice sought by the clients or given by the lawyer. The attorney-client privilege does not protect against disclosure of information that is damaging or even incriminating; it only prevents disclosure of confidential professional communications. *In re Osterhoudt,* 722 F.2d at 593.

We need not decide which, if any, of the identified "exceptions" we should adopt since disclosure in the instant case would not be protected by any of these "exceptions" to the general rule requiring disclosure.

An innovative approach was proposed in Professor Goode's scholarly article, *Identity, Fees, and the Attorney–Client Privilege.* He advocates a cost-benefit analysis weighing the potential benefits of disclosure against any possible deterrent to seeking legal advice or impediments to attorney-client communication. Goode concludes that under a cost-benefit analysis, especially where, as in the instant case, the identity of the client is known, the balance of costs and benefits generally weighs heavily in favor of the disclosure of fee information. He states:

---

5. *See* 5 Lynn McLain, *Maryland Evidence,* § 503.6 at 489 (1987), "Nonassertive acts which the attorney observes or commits, which are not intended to communicate information, generally are held to be unprotected."

"As a policy matter, therefore, the case for ordinarily leaving fee arrangement information unprivileged is a strong one. The cost-benefit balance tips heavily in favor of disclosure. Requiring lawyers to disclose such information is not likely to deter many potential clients from seeking legal advice, regardless of whether they are already known to the prosecution. Some individuals who prefer to pay their legal bills in cash might be deterred, but this is a self-inflicted cost that easily can be avoided by using another form of payment. The benefits of disclosure are, however, ample. Requiring disclosure will make available to the government evidence that may be highly probative of various types of wrongdoing, including tax evasion, participation in a continuing criminal enterprise, or membership in a drug smuggling conspiracy. Only if prosecutors are allowed to seek fee arrangement information from a lawyer as a means of discovering who has been seeking legal advice from that lawyer will the costs of disclosure rise substantially."

59 Geo.Wash.L.Rev. at 355.

The legal profession should be concerned with what Dean Charles McCormick characterized as "the prevailing flavor of chicanery and sharp practice pervading most of the attempts to suppress proof of professional employment...." Charles McCormick, *Evidence*, § 90 at 216 (E. Cleary 3d ed. 1984). We agree with Dean McCormick that the "rule of disclosure seems the approach most consonant with the preservation of the repute of the lawyer's high calling." *Id.* at 217.

The attorney-client privilege is necessary in order to assure that clients are not impeded in seeking legal advice or in confiding in their lawyers. The privilege, however, is not absolute; it does not restrict disclosure of every aspect of what occurs between the attorney and the client. In addition, the burden of establishing a privilege rests on the party asserting the privilege. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d at 454; Charles McCormick, *Evidence*, § 88 at 209. We hold that the attor-

ney-client privilege does not prevent disclosure of the fee arrangements in the instant case.

In his brief and argument, Mr. Murphy also alleges a violation of his clients' Fifth and Sixth Amendment rights. These issues were not raised in the court below and, therefore, ordinarily would not be addressed by this Court. Even if they had been properly preserved for review, we fail to see any basis for Murphy's Fifth and Sixth Amendment claims on behalf of his clients. The former clients are not being compelled to incriminate themselves, and no confidential constitutionally protected documents prepared by the clients are being sought. *Cf., Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The investigators are seeking information about cash expenditures; the nature of the expenditures are irrelevant. Whether money was spent for a car, a house, or a lawyer is not germane; it is the fact money was spent, not the purpose for which it was spent, that is the center of the inquiry. A car purchaser being investigated for tax fraud certainly could not contend that the amount and terms of his payment to a car dealer are not disclosable by the dealer because of the purchaser's Fifth Amendment privilege.

Murphy's Sixth Amendment constitutional claims on behalf of his former clients are inapplicable in the instant case. R.A. and D.B. are *former* clients of Murphy who are under investigation. The Sixth Amendment right to counsel does not attach during the investigation stage of a prosecution. *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The Sixth Amendment, if applicable at all, would be violated only if furnishing the information would create an actual conflict between a client and the attorney who is representing that client. "Only a showing of actual conflict [between attorney and client], rather than mere speculative assertions, may overcome the concrete 'obligation of every person to appear and give his evidence before the grand jury.'" *In re Grand Jury Subpoena for Reyes–Requena,* 913 F.2d 1118, 1130 (5th

Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991) (quoting *United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 77 (1973)). The Fourth Circuit has recently reiterated that the Sixth Amendment right to counsel is not violated by requiring an attorney to disclose fee information that might place the attorney in a position of acting as a witness against a client unless disclosure would also create an actual conflict between attorney and client that would require disqualifying the attorney from representing his/her client. *In re Grand Jury Matter*, 926 F.2d 348, 351 (4th Cir.1991).

In the instant case, compelling Mr. Murphy to disclose information about fees paid by two former clients does not violate either the attorney-client privilege or the clients' Fifth or Sixth Amendment rights.

JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.

ROBERT M. BELL, Judge, dissenting.

I agree with the majority that "Rule 1.6 [of the Model Rules of Professional Conduct] applies to confidential communications between a client and an attorney in all situations *except* where the 'evidence is sought from the lawyer through compulsion of law.'" (emphasis in original). The information, sought in this case, which has been subpoenaed, *duces tecum*, from the respondent, by the Office of the Attorney General involves attorney's fees a former client paid respondent for representation in connection with a narcotics prosecution, a matter unrelated to the present tax investigation. Thus, it is the "attorney-client privilege rather than the Rules of Professional Conduct" on which we must focus. The circuit court erred when it applied Rule 1.6, perhaps as an adjunct to the attorney-client privilege, to quash the subpoena.

The "overwhelming weight of authority," in this country, at least in the federal circuits, is, indeed, that records pertaining to a specific client's payment of attorney's fees and expenses are not privileged, *i.e.*, they do not fall within the contours of the attorney-client privilege. *In re: Grand Jury Proceedings, 88–9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir.1990); *See In re: Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983); *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977); *In re: Michaelson*, 511 F.2d 882, 889 (9th Cir.1975); *In re: Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir.1982); *In re: Grand Jury Proceedings (United States v. Jones)*, 517 F.2d 666, 670 n. 2 (5th Cir.1975); *In re: Grand Jury Matter*, 926 F.2d 348, 351 (4th Cir.1991); *United States v. (Under Seal)*, 774 F.2d 624, 628 (4th Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986); *In re Special Grand Jury No. 81–1*, 676 F.2d 1005, 1009 (4th Cir.1982); *In re Shargel*, 742 F.2d 61, 62 (2nd Cir.1984); Daniel J. Capra, *Deterring the Formation of the Attorney–Client Relationship: Disclosure of Client Identity Payment of Fees, and Communications by Fiduciaries*, 4 Geo. J. Legal Ethics, 235, 237 (1990); Steven Goode, *Identity, Fees, and the Attorney–Client Privilege*, 59 Geo.Wash.L.Rev. 307, 320–35 (1991).

The majority is correct that the facts of this case do not bring the requested fee information within any recognized exception to the general rule. Because former, rather than present clients, are involved in this case,[1] the charges in connection with which respondent represented them have been resolved, and the subpoena relates to a tax investigation being conducted into their finances, which disclosure,

---

1. I refer only to the situation in which former clients' fee information is subpoenaed and I read the majority opinion as discouraging, rather than condoning, the subpoena of the fee information concerning present clients. Although it is clear to me that the attorney-client relationship is impacted more directly when clients, rather than former clients, are involved, in candor, aside from that fact, there seems to be little reason for distinguishing between former and present clients if, in neither case, is the fee information within the privilege.

by the respondent of the fee information would not impli-
cate these clients in the matter for which they sought his
legal advice.  Nor is the information the last link the State
needs to determine the clients' identity and, thus, connect
them with illegal activity, *see In re: Grand Jury Proceed-
ings (Pavlick)*, 680 F.2d at 1027; the subpoena having
referred to the clients by name, identity simply is not an
issue.[2]  Finally, since, as already noted, the clients did not
consult the respondent about a tax investigation or tax
matters, the "communication" exception does not apply.[3]

The combination of the lack of authority and, in the
context of this case, the failure of the fee information to
come within one of the exceptions, leaves the majority
comfortable with its conclusion that fee information not
only should, but must, be disclosed.  Like other cases which
have stated it, however, the majority opinion, too, fails to
provide a reasoned basis upon which to justify that proposi-
tion as a matter either of reason or definition.  *See* Steven
Goode, *Identity, Fees and the Attorney–Client Privilege*,
59 Geo.Wash.L.Rev. at 321–22, in which the author, whose
bottom line on the issue is the same as the majority's,
bemoans the cases' lack of principled analysis.  He points
out that

> [t]he starting point in *Baird* [*v. Koerner*, 279 F.2d 623
> (9th Cir.1960) ] as it has been in numerous cases that
> followed, was the oft-stated hornbook rule that the identi-
> ty of a client is ordinarily not privileged.  Although the
> justification for this rule is far from self-evident, it boasts
> a venerable heritage and was not challenged by the court.

---

**2.**  It may be asked: should the last link theory automatically apply to
an investigation into violations of the prosecution for income tax
laws, since the amount paid the attorney necessarily will provide a
substantial, if not the final, link, in the chain of evidence necessary
for the defendant's indictment?  I would answer "yes."

**3.**  That exception applies when disclosure of the information subpoe-
naed would necessarily disclose a confidential communication.  *See
e.g. Tornay v. United States*, 840 F.2d 1424, 1428 (9th Cir.1988); *United
States v. Jeffers*, 532 F.2d 1101, 1115 (7th Cir.1976), *vacated in part on
other grounds*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).

Instead, the court sought to show why this was not the ordinary case." (footnotes omitted).

*Id.* The "venerable heritage," to which Professor Goode refers really does relate to client identity, not, as is the issue in the instant case, the fees paid by the client. *See Chirac v. Reinicker,* 24 U.S. (11 Wheat) 280, 294, 6 L.Ed. 474 (1826) (footnotes omitted).

The rationales offered for holding that fee information is not confidential are not persuasive. *See* Goode, 59 Geo. Wash.L.Rev. at 348. One rationale for excluding fee information from the attorney-client privilege was stated in *In re: Osterhoudt,* 722 F.2d at 593: "Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating." Another was stated in *In re Shargel:*

> It seems evident to us that a broad privilege against the disclosure of the identity of clients and of fee information might easily become an immunity for corrupt or criminal acts. *See* McCormick, *Evidence* § 90 at 187 (2d ed. 1972) ("One who reviews the cases in this area will be struck with the prevailing flavor of chicanery and sharp practice pervading most of the attempts to suppress the proof of professional employment.") Such a shield would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money. The bar and the system of justice will suffer little if all involved are aware that assured safety from disclosure does not exist.

742 F.2d at 64. Still another policy reason was offered by the 9th Circuit:

> The courts have inherent power to regulate the bar. The courts have the right to inquire into fee arrangements both to protect the client from excessive fees and to assist an attorney in collection of his fee, but more importantly, the court may inquire into fee arrangements

to protect against suspected conflicts of interest. When an attorney is paid by someone other than his client to represent that client there is a real and present danger that the attorney may in actuality be representing not the interests of his client, but those of his compensator. Not only does the client have a right to know who is paying his attorney, but the court retains the right to satisfy itself that no conflict exists and that the attorney is fulfilling his duty of loyalty to his client.

511 F.2d at 888–89.

An important purpose of the attorney-client privilege is "to increase communication between clients and lawyers." Goode, 59 Geo.Wash.L.Rev. at 314. In Maryland, we have said that the privilege is undergirded by the public policy that " 'an individual in a free society should be encouraged to consult with his attorney whose function is to counsel and advise him and he should be free from apprehension of compelled disclosures by his legal advisor'." *State v. Pratt*, 284 Md. 516, 520, 398 A.2d 421, 423 (1979), quoting *Harrison v. State*, 276 Md. 122, 135, 345 A.2d 830, 838 (quoting *Morris v. State*, 4 Md.App. 252, 254, 242 A.2d 559, 561 (1968)). As Professor Goode points out, however, that purpose cannot be viewed in a vacuum:

> Until a potential client actually becomes a client, no lawyer-client communication can occur. In analyzing attorney-client privilege issues, therefore, courts must be sensitive not only to the effect of their decisions on the willingness of existing clients to confide in their lawyers but also on the willingness of potential clients to become clients. (footnote omitted).

59 Geo.Wash.L.Rev. at 314. Neither can the reach of the privilege. *See Pratt*, 284 Md. at 520, 398 A.2d at 423 ("While never given an explicit constitutional underpinning, the privilege is, nevertheless, closely tied to the federal, as well as this State's, constitutional guarantees of effective assistance of counsel and could, if limited too severely, make these basic guarantees virtually meaningless.") Dan-

iel J. Capra, writing in 4 Geo. J. Legal Ethics at 238, puts it thusly:

> The privilege is only one aspect of the trust and confidence that is necessary for an effective attorney-client relationship. The attorney's ethical obligation to protect against disclosure of adverse client information extends beyond the evidentiary privilege. This obligation is based on the proposition that the trust and confidence which is the foundation of the attorney-client relationship do not rest solely on the privilege, but also on the expectation that the attorney has a duty of loyalty and will represent the client's interests in every appropriate way. It is hardly conducive to trust and confidence if the attorney is forced to give damaging information about his client to the government. Moreover, forcing the attorney to become a witness against the client may require the attorney to disqualify himself with an obvious deleterious effect on the attorney-client relationship. Finally, a prosecutor's subpoena of defense counsel can have a significant chilling effect on the lawyer and the bar as a whole.[4] (footnotes omitted).

*See also Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358, 1362 (1980).

It is safe to assume that most clients do not consider the matter at all, but it is also safe to assume that, were they to have thought about it, not one of them would expect that his or her fee arrangements would easily be revealed, even to the government. Indeed, I suspect that most would anticipate that fee information, like other communications or information shared with his or her lawyer, is, and will remain, confidential. Requiring disclosure of fee information, even after the attorney-client relationship has ceased, I

---

**4.** While this passage seems directed at situations in which there are on-going attorney-client relationships, much of what the author says applies equally to former attorney-client relationships, especially when service of a subpoena reasonably can be anticipated. *See infra.*

believe, is very likely to have an effect on a potential client's willingness to consult an attorney.

Payment of attorney's fees is necessary, not merely incidental, to the establishment of the attorney-client relationship.[5] Ordinarily, payment is required before the relationship is formed and certainly before representation is provided. Unless the fees are paid, in most instances, there will be no attorney-client relationship. The fee is so intimately related to the attorney-client relationship, therefore, as to be inseparable from it. In short, payment of the attorney's fees charged is at the very core of the relationship. The size of the fee may also suggest a great deal about the client's case and representation, for example, just how critical the client's situation is perceived to be, both by the client and by the lawyer, which, in turn, bears on how much the client is able to pay.

When the State subpoenas, as part of a tax investigation, an attorney's fee information relating to a former client, it is hoping to uncover incriminating evidence, which the attorney served with the subpoena provides when the information sought is turned over. A dedicated and tenacious advocate who is required to furnish fee information on a former client may be transformed, in a matter of a few days, from that tenacious advocate on behalf of that client into a State's witness against that client. And, despite the State's and the majority's refusal to acknowledge it, the matter about which that attorney will be a witness is intimately related to, if not inseparable from, the case in which he represented the client. Under these circumstances, as instances of fee information being subpoenaed become more and more frequent, counsel will find it necessary to advise potential clients that, at some time in the future, after the matter for which he or she was consulted

---

**5.** Of course, because attorney's fees are ordinarily not an issue in the case of the public defender or when services are rendered *pro bono,* my focus is on the private attorney who hopes his or her business is profitable.

has concluded, his or her records regarding the fee charged may be subpoenaed and, if that occurs, he or she will be obliged to respond by providing the State with the information it seeks, the fees paid. Stress and strain on the attorney-client relationship undoubtedly will result. To be sure, some potential clients will not be deterred from seeking the advice of counsel. Many, however, will be.

Among the consequences of requiring an attorney to turn over fee information on former clients and, thus, to become the State's witness, perhaps its chief witness, against those clients is that, rather than consulting, and hiring, private counsel, potential clients, aware of that probability, may seek representation from the public sector, *i.e.* the public defender. This will increase the already heavy burden borne by that sector in assuring meaningful access to counsel. On the other hand, where public defender representation is not available, potential clients may choose to forego counsel altogether and represent themselves. Under either scenario, it is the legal profession that loses; the attorney-client relationship will be inhibited where it does not exist and undermined, where it does.

Permitting a lawyer to be used as a source of information to be used to prosecute that lawyer's former clients has another, and perhaps even more significant, consequence: the process may easily be abused.[6] If a lawyer's fee records are to be allowed to be subpoenaed in a tax investigation, tax prosecutions may thereby require minimal investigation and, so, may render tax prosecutions a more viable and, effective, prosecution option than conventional prosecutions.[7] Prosecutors may conclude, and act on the prem-

---

**6.** We do not here deal with Internal Revenue Code § 6050I, as to which no contentions are made. That regulation cannot justify an extension of the incursions into the attorney-client relationship/privilege. One ill-advised regulation is not justification for another ill-advised step.

**7.** Maryland Code (1988), §§ 13–1001 and 13–1002 of the Tax General Article reveal that one who violates the State income tax laws is subject to a not insubstantial penalty, although, admittedly, not so

ise, that so long as the predicate for the tax investigation is laid—the defendant is charged with a substantive offense requiring him or her to consult, and pay, counsel—it does not much matter whether the case is lost or aborted prior to trial; a viable back-up prosecution, which can build on the aborted, or lost, one and requiring no more than a subpoena for an attorney's fee records, is still available. Thus, rather than providing an incentive diligently to build a case on substantive charges, the availability of the lawyer's records as a source of evidence in a tax prosecution, provides the opposite incentive. Prosecutors may be encouraged to initiate prosecutions quickly and to terminate them as soon as possible; with the predicate in place—the defendant has consulted, and presumably paid, counsel for defending him or her in the aborted prosecution—the State can move quickly to pursue him or her on another front, success in the initial prosecution being secondary to the ultimate goal of nailing the defendant on any charge possible. Building the tax case could become, in reality, the only seriously pursued prosecution.[8]

While I do not quarrel with the philosophy of vigorously pursuing criminals wherever they may operate and nailing them as often as possible, I do quarrel with the role the attorney is forced to play in the process. In my opinion, there is something unseemly and repugnant, not to mention inappropriate, about permitting the State to maintain a prosecution on this basis and there is also something very

_____

severe as most mandated by the State narcotics laws. For failure wilfully to file an income tax return, the penalty is "a fine not exceeding $5000 or imprisonment not exceeding 5 years or both." § 13–1001(c). The penalty for wilfully filing a false return (which is the likely offense for a narcotics dealer) is the penalty for perjury, § 13–1002(b), or 10 years. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 439.

8. In its initial brief, the State acknowledges that it has initiated a prosecution program of prosecuting known or suspected narcotics traffickers for violation of the State income tax laws. It asserts, as justification for the program, without reference to any source, that "[a]n expense common to these individuals is attorneys fees."

wrong with implicating counsel in it. It is "well-established that 'the defendant has a right ... to compel the State to investigate its own case, find its own evidence, and prove its own facts.'" *Pratt,* 284 Md. at 524, 398 A.2d at 426, quoting *United States v. Wright,* 489 F.2d 1181, 1195 (D.C.Cir.1973).

There may be justification for the subpoena of an attorney's fee information if the attorney were the only source of evidence of a defendant's tax evasion. There is no indication in this record that the State seeks the attorney's records as a last resort, or that the information is not available from another source. I am satisfied that the information the State seeks in this income tax investigation is available from other sources: the former client's bank records or the records of merchants with whom he or she has dealt, such as car dealers, clothing stores, credit card companies, etc.[9]

The majority opinion contains another troubling premise: "that the ⸢rule of disclosure seems the approach most consonant with the preservation of the repute of the lawyer's high calling.'" At 11, quoting Charles McCormick, *Evidence,* § 90 at 216 (E. Cleary 3d ed. 1984).

The lawyer's high calling is not compromised when a lawyer, true to that calling and consistent with his or her role as advocate, defends a criminal defendant charged with unpopular, even dastardly, charges. Nor is it compromised when that same lawyer, recognizing the potential effects on the attorney-client relationship, resists the State's efforts to make him its instrument in the prosecution of former clients. There is no suggestion of "chicanery or sharp practice" by counsel in this case. Furthermore, the fact that portions of the client population may be tempted to

---

9. The relationship between attorney and client has elements, that none of these other relationships has—trust and confidence. Indeed, it is the relationship, as well as the legal skills the lawyer possesses, that the fees purchase. In my view, the attorney-client relationship can not be equated with these other relationships.

"misuse" lawyers and, indeed, some lawyers may allow themselves to be so used,[10] is not a sufficient basis for ordering the disclosure of fees or holding that they are outside the privilege. In my opinion, the vast majority of lawyers take seriously their obligations, both ethical and professional. I would trust *them* to do the right thing rather than abridging the attorney-client privilege/relationship, on the assumption that they will not.

Like Judge Politz, dissenting in *In Re: Grand Jury Proceedings (Pavlick)*, I believe this decision may be the beginning of the demise of the attorney-client relationship and, hence, privilege in this State. I adopt his lament:

> The drug traffic is abhorrent. This cancer on our social fabric must be eradicated. The desire to pursue vigorously all suspected participants is understandable and laudatory. Many things may be sacrificed in this effort, but the attorney-client privilege is not, to me, a forfeitable item. The privilege is of such value to our civilized society and system of criminal justice that I must regretfully dissent from today's ruling and its natural consequence—defense counsel becoming the government's unwilling instrument for the investigation and prosecution of clients for *past* criminal acts. I am convinced that society's momentary gain from this development will be far outdistanced by its ultimate loss. (emphasis in original)

680 F.2d at 1034. I add that, given the chilling effect of requiring fee information to be disclosed once representation has ceased, soon there may not be an attorney-client

---

**10.** A lawyer engaged with a client in a criminal enterprise is another kettle of fish entirely—the privilege does not apply to that relationship and, in any event, there is no scarcity of resources available to prosecute that lawyer who, by the way, should be prosecuted, and a disciplinary mechanism which can be engaged to remove him or her from the "high calling." Of course, in that circumstance, as is true whenever a disclosure may tend to be incriminatory, the lawyer may legitimately interpose his or her fifth amendment privilege.

privilege to protect because there will be no attorney-client relationship.[11]

602 A.2d 1231

**In re LEON B.**

**No. 6, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 13, 1992.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore), for petitioner.

James Wyda, Asst. Public Defender (Stephen E. Harris, Public Defender, Baltimore), for respondent.

Submitted to MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

---

**11.** This case, and the approach which it certifies, is about the drug traffic. The clients were charged with narcotics violation and the State's brief very candidly describes the purpose of its prosecution program: "the investigation of known and suspected narcotics traffickers for violations of State income tax laws," both of which facts the majority opinion also acknowledges.