646 A.2d 389

**In re CRIMINAL INVESTIGATION NO. 1/296X
IN the CIRCUIT COURT FOR ANNE
ARUNDEL COUNTY.**

**No. 130, Sept. Term, 1993.**

Court of Appeals of Maryland.

Aug. 25, 1994.

Carolyn H. Henneman, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellant.

Fred R. Joseph, Greenbelt, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

This case involves the issue of whether an attorney may refuse to comply with a grand jury subpoena *duces tecum* which seeks the records of the attorney's fees paid by a named current client.

## I.

The Anne Arundel County Grand Jury has been conducting a criminal tax investigation of R.W.[1] since March, 1993. The investigation is part of the Attorney General's "narco-tax"

---

1. The identity of the target of this investigation is withheld pursuant to Maryland Rule 8–123(c).

program that targets known and suspected drug dealers for income tax investigation and, if warranted, prosecution. The investigation utilizes the "net worth" method of accounting to expose individuals who expend more than the incomes reported on their tax returns. During this inquiry, the grand jury issued a subpoena *duces tecum* to M. Cristina Gutierrez, a member of the Maryland bar. The subpoena requested records of the attorney's fees that R.W. paid to Gutierrez. Gutierrez initially was retained to represent R.W. in a narcotics case as well as state and federal forfeiture actions, all of which were pending when this investigation commenced. Apparently she also is representing R.W. in the tax investigation for which the subpoena was issued.

Gutierrez filed a motion to quash the subpoena in the Circuit Court for Anne Arundel County on the grounds that compelling an attorney to divulge fee information pertaining to a current client would violate the attorney-client privilege and the Sixth Amendment right to counsel. She also complained that releasing such information would result in a "chilling effect" on the relationship between counsel and her client. On October 8, 1993, Judge Bruce C. Williams issued a Memorandum Opinion and Order "stay[ing] the enforcement of the subpoena until Ms. Gutierrez's representation of her client has terminated." Judge Williams based his decision, in part, on this potential "chilling effect" and its threat to the sanctity of the attorney-client relationship. The State filed a Motion for Reconsideration that was denied by the circuit court. Thereafter, the State filed a Notice of Appeal to the Court of Special Appeals. Prior to the intermediate appellate court's consideration of the case, we issued a writ of certiorari.

■ When the circuit court delayed the enforcement of the subpoena until the termination of Ms. Gutierrez's "representation of her client," the court in effect permanently denied enforcement of the subpoena because as long as the tax investigation continues it is reasonable to assume that Ms. Gutierrez's representation of R.W. also will continue. There-

fore, the order denying enforcement of the subpoena was an appealable final order.

Although this is a case of first impression in Maryland, it is fundamentally an extension of our holding in *In re Criminal Investigation No. 1/242Q,* 326 Md. 1, 602 A.2d 1220 (1992). In that case, we held that information pertaining to fees paid by a *former* client who was the subject of a tax investigation was not protected. Gutierrez attempts to distinguish the instant case from *In re Criminal Investigation No. 1/242Q* on the grounds that R.W. is a current client rather than a former client.

## II.

### Attorney–Client Privilege

We fully recognize the importance of the attorney-client privilege and its close relationship with the constitutional rights pertaining to the effective assistance of counsel. As we said in *State v. Pratt,* 284 Md. 516, 398 A.2d 421 (1979),

"[w]hile never given an explicit constitutional underpinning, the privilege is, nevertheless, closely tied to the federal, as well as *this State's,* constitutional guarantees of effective assistance of counsel and could, *if limited too severely,* make these basic guarantees virtually meaningless." (Emphasis added).

284 Md. at 520, 398 A.2d at 423.

Initially, it has been suggested that, prior to issuing a subpoena for an attorney's fee records, we should require the State to make a preliminary showing of necessity. No similar requirement exists for other grand jury subpoenas, and there is no reason why courts should create a pre-subpoena disclosure requirement for these records. In *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238 (2d Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986), the court stated the following:

"To create new standards for obtaining fee information at the grand jury stage risks unacceptable interruption of the

grand jury process and inevitable probing into what information the grand jury already has in order to determine whether a heightened 'need' standard has been met. To allow a grand jury target to challenge the subpoena on the basis of a 'need' requirement would seriously jeopardize the secrecy of the proceeding and the grand jury's investigative functions."

781 F.2d at 248. We reject the suggestion that, prior to issuing a subpoena for attorney fee records, the State should make a preliminary showing of necessity.

In determining whether the fee information pertaining to a current client is protected by the attorney-client privilege, we should begin with our recent holding in *In re Criminal Investigation No. 1/242Q, supra*. In that case, the Anne Arundel County Grand Jury issued a subpoena *duces tecum* to William H. Murphy, Jr., Esquire, commanding him to reveal fee information regarding two former clients whom the grand jury was investigating for possible violations of Maryland tax law. Mr. Murphy moved to quash the subpoena on the basis that the information was privileged and confidential. The Circuit Court for Anne Arundel County granted Mr. Murphy's motion and the State appealed. This Court granted certiorari before the Court of Special Appeals addressed the question.

After explaining that the attorney-client privilege, and not the Rules of Professional Conduct, governs the disclosure of an attorney's fees, we proceeded to discuss whether the attorney-client privilege would shield Mr. Murphy from disclosing such information. We first recognized that "[t]he overwhelming weight of authority holds that the attorney-client privilege is generally not violated by requiring disclosure of the payment of attorney's fees and expenses." *In re Criminal Investigation No. 1/242Q*, 326 Md. at 7, 602 A.2d at 1222. *See, e.g., In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983); *In re Grand Jury Matter*, 926 F.2d 348, 351 (4th Cir.1991). We then discussed, without adopting, three exceptions to this general rule which have received varying degrees of support in the federal court system. *See In re Criminal Investigation No. 1/242Q*, 326 Md. at 7–10, 602 A.2d at 1223–

24. We concluded that none of these exceptions was applicable to the facts of that case and therefore, even if we had adopted one or more of the exceptions, the grand jury could still compel disclosure of fees paid by a former client.

The "last link" exception, primarily used in situations where the information sought is the client's identity, was obviously inapplicable because Mr. Murphy's clients were known to the state. *See In re Criminal Investigation No. 1/242Q,* 326 Md. at 8–9, 602 A.2d at 1223. Another exception, the "communication" exception, protects information that is considered " 'tantamount to a confidential professional communication.' " *In re Criminal Investigation No. 1/242Q,* 326 Md. at 9, 602 A.2d at 1224 (quoting *Tornay v. United States,* 840 F.2d 1424, 1428 (9th Cir.1988)). In *In re Criminal Investigation No. 1/242Q,* we offered two reasons why this exception would not apply. First, payment of a fee is a nonassertive act that is not intended to communicate information. Second, disclosure of the amount and method of the payment of a fee revealed nothing about the advice sought by the clients or given by the lawyer in that case. 326 Md. at 10, 602 A.2d at 1224. *See also United States v. Grand Jury Matter,* 789 F.Supp. 693, 696 (D.Md.1992) (Hargrove, J.) (applying similar reasoning).

The final exception that we considered was the "legal advice" exception. According to the Ninth Circuit, this exception applies where "disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case." *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach),* 695 F.2d 363, 365 (9th Cir.1982). We determined that the exception did not apply in *In re Criminal Investigation No. 1/242Q* because the clients did not retain Mr. Murphy for the tax investigation, and therefore the advice sought had nothing to do with the tax investigation.

In the instant case, Ms. Gutierrez does not claim privilege based on the "last link" or the "communication" exception. She does argue, however, that the "legal advice" exception should be adopted in the case at bar, and that this exception

would protect the fee information which the State sought by subpoena.

The facts in *In re Criminal Investigation No. 1/242Q* were quite similar to the facts in the instant case, and this Court held the attorney fee information was not privileged. The trial judge in the instant case sought to distinguish our prior holding on the basis that the attorney in our prior case no longer represented the target of the investigation, whereas in the instant case, she still does. The decision in *In re Criminal Investigation No. 1/242Q* did involve a former client, but our holding was not based on that fact. The principle behind the attorney-client privilege—protecting confidential communications—applies to former and current clients. The attorney-client privilege does not cease with the termination of the relationship. In fact, the privilege is theoretically perpetual. *See* 1 *McCormick on Evidence* § 94, at 348 (John W. Strong ed., 4th ed. 1992) ("The accepted theory is that the protection afforded by the privilege will in general survive the death of the client."); 5 Lynn McLain, *Maryland Evidence* § 503.14, at 495 (1987) (stating that the privilege applies even after the attorney-client relationship has ended, "indeed, even after the client's death"). In *Harrison v. State*, 276 Md. 122, 345 A.2d 830 (1975), this Court reiterated that "confidential communications are not to be revealed at any period of time, either before or after the suit has been brought to an end, or in any other case; for, as to all such matter[s], his mouth is shut forever." 276 Md. at 132, 345 A.2d at 836 (internal quotation marks and attributions omitted) (emphasis omitted). Therefore, the attorney-client privilege extends beyond the duration of the relationship, rendering the distinction between former and current clients insignificant with respect to the privilege.

Gutierrez suggests that if the general rule is that the attorney-client privilege does not prevent disclosure of a present client's fee information, then "the Court of Appeals should adopt the 'legal advice' exception and hold that it is applicable to the instant case." The legal advice exception would protect

fee information under the attorney-client privilege where "'disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case.'" *In re Criminal Investigation No. 1/242Q*, 326 Md. at 7, 602 A.2d at 1223 (quoting *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach)*, 695 F.2d at 365). A similar issue was decided by the Fourth Circuit in *In re Grand Jury Matter, supra*, where a grand jury requested fee records from attorneys whose client was under investigation for possible income tax violations. The attorneys were representing the client in connection with the income tax violations being investigated, and they claimed that they were excused from producing the documents because the fee information would implicate the client in the same criminal activity for which he sought legal advice. The Fourth Circuit, however, held that the attorney-client privilege did not preclude the attorneys from producing the fee documents. Judge Murnaghan, writing for the three judge panel, discussed and then rejected the legal advice exception. He explained as follows:

"[The attorneys] argue for the application of an exception that recognizes a privilege ' "where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." ' [*United States v.*] *(Under Seal)*, 774 F.2d [624,] 628 [ (4th Cir.1985), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986) ] (quoting *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977)). Whatever label the attorneys give to their supposed exception, it involves recognizing a privilege for information implicating the client, regardless of whether it is a confidential communication. Such a privilege receives little support from current case law.

The attorneys have suggested that although *United States v. Ricks*, 776 F.2d 455 (4th Cir.1985), questioned the validity of the exception, nonetheless, the Fourth Circuit intends to apply it. We disagree. In *Ricks*, Chief Judge Harrison L. Winter recognized that *Hodge & Zweig*, the

case giving rise to the 'exception,' 'may no longer be good law in the Ninth Circuit. *See In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir.1983). Certainly its purported teaching has been rejected by other circuits.' 776 F.2d at 465 (citing decisions by the Second, Sixth, Seventh, and Eleventh Circuits).

The attorney-client privilege protects only confidential communications. 'Fee arrangements usually fall outside the scope of the privilege because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating.' *In re Osterhoudt*, 722 F.2d at 593; *see Ricks,* 776 F.2d at 465. An exception such as the one suggested by the attorneys rests on an unconvincing rationale." (Footnote omitted).

*In re Grand Jury Matter*, 926 F.2d at 352. The legal advice exception has been expressly rejected by many courts. *See, e.g., In re Grand Jury Subpoenas*, 803 F.2d 493, 497 (9th Cir.1986) ("It is not the law that the requisites of the attorney-client privilege are met whenever evidence regarding the fees paid the attorney would implicate the client in a criminal offense regarding which the client sought the attorney's legal advice."), *corrected,* 817 F.2d 64 (9th Cir.1987); *United States v. Ricks*, 776 F.2d 455, 465 (4th Cir.1985) (discussing the legal advice exception and noting that "its purported teaching has been rejected by other circuits"); *In re Osterhoudt*, 722 F.2d at 592–93. We decline to adopt it as an exception to the general rule that attorney fee information is not privileged—especially under the circumstances of the instant case.

■■ Gutierrez was retained to represent R.W. in drug and forfeiture cases. The fees in these cases are relevant only to the separate and distinct tax investigation, and their records would not fall within the legal advice exception. By retaining Gutierrez in the tax investigation, R.W. should not thereby be able to preclude her from furnishing relevant and probative information to the grand jury about fees in other unrelated cases. As to any fee R.W. may have paid to Gutierrez for representing him in the tax investigation, that

information also should not be privileged.[2]  R.W. knew that he was the subject of a net worth tax investigation when he paid the fee to Gutierrez.  The attorney-client privilege "is not generally viewed as affording the attorney license to withhold evidence from the judicial system."  1 *McCormick on Evidence* § 89, at 328 n. 12.  We decline to expand the attorney-client privilege by creating an exception which would allow concealment of attorney fee records which are relevant to a net worth investigation.  Since we decline to apply the legal advice exception in the instant case, we are left with the general rule adopted in *In re Criminal Investigation No. 1/242Q* that the attorney-client privilege does not preclude an attorney from furnishing fee records to a grand jury conducting an income tax investigation.

## III.

### Sixth Amendment Right to Counsel

■■■■■  Gutierrez next asserts that compelling an attorney to reveal fee information pertaining to a current client will violate the client's constitutional right to counsel.  She claims that, if she is compelled to disclose the fee information, a conflict will result between her and her client.  According to Ms. Gutierrez, this conflict might eventually lead to her disqualification as the attorney in the matter, and hence violate the client's Sixth Amendment right to the counsel of his choice.  We begin our analysis by noting that there is no Sixth Amendment right to counsel during a criminal investigation, even if the person being investigated has retained counsel. *See Moran v. Burbine*, 475 U.S. 412, 430–31, 106 S.Ct. 1135,

---

**2.**  It is questionable whether the State is seeking records of fees paid to Gutierrez for her representation of R.W. in connection with the grand jury investigation.  In its response in opposition to the motion to quash the subpoena *duces tecum,* the State indicated that "[i]n this case, of course, Respondent's representation of R.W. is in connection with a *different* case than the one under investigation by the Grand Jury issuing the subpoena.  As a result, Respondent cannot even claim ... that the information sought would implicate the client in the very criminal activity for which her legal advice was sought."  (Emphasis in original).

1145–46, 89 L.Ed.2d 410, 427 (1986). As the United States Supreme Court observed in *Moran v. Burbine,*

> "[t]he Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake.... Its purpose, rather, is to assure that in any 'criminal prosecutio[n],' U.S. Const., Amdt. 6, the accused shall not be left to his own devices in facing the ' "prosecutorial forces of organized society." ' *Maine v. Moulton,* [474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481, 492 (1985) ] (quoting *Kirby v. Illinois,* [406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 418 (1972) ] ). By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation."

475 U.S. at 430, 106 S.Ct. at 1145–46, 89 L.Ed.2d at 427. *See also McNeil v. Wisconsin,* 501 U.S. 171, 174, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 166–67 (1991); *In re Criminal Investigation No. 1/242Q,* 326 Md. at 12, 602 A.2d at 1225. We are unwilling to find a denial of the right to counsel at the investigative stage when there is no right to counsel at that stage. Therefore, because the grand jury is only *investigating* R.W., a Sixth Amendment violation should not result from compelling Ms. Gutierrez to disclose fee information to the grand jury.

Additionally, Gutierrez asserts that providing the grand jury with the fee information would violate her duty of loyalty to her client. Again we turn to *In re Criminal Investigation No. 1/242Q* to resolve this contention. In that case, we determined that disclosure of fee information would violate the Sixth Amendment *only if* it created an *actual conflict* between the client and the attorney. 326 Md. at 12–13, 602 A.2d at 1225–26. *See also In re Grand Jury Matter,* 926 F.2d at 351; *In re Grand Jury Subpoena for Reyes–Requena,* 913 F.2d 1118, 1129–30 (5th Cir.1990), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991). The mere possibility, however, that a conflict might arise from compliance with the subpoena is not enough to overcome the " ' "obligation of every person to appear and give his evidence before the grand jury." ' " *In re Criminal Investigation No. 1/242Q,* 326 Md.

at 12, 602 A.2d at 1225 (quoting *In re Grand Jury Subpoena for Reyes–Requena,* 913 F.2d at 1130, in turn quoting *United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 77 (1973)). In the case at bar, Ms. Gutierrez has not been placed in actual conflict with her client.

Another reason Gutierrez suggests that disclosing attorney fees could lead to a Sixth Amendment violation is that, if she furnishes incriminating information, she could be compelled to testify against her client at trial, and this could result in her disqualification as his attorney. *Cf. United States v. (Under Seal),* 774 F.2d 624, 627–28 (4th Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986). The State, however, argues that it is unlikely that Gutierrez will ever have to testify against her client.[3] Even if we assume that the Sixth Amendment would preclude the prosecution from calling Gutierrez as a witness at trial, the prosecutor has offered various alternative methods for providing the fee information such as using stipulations or by having a bookkeeper authenticate the records. By using these methods, the fee information could be reasonably provided at trial without requiring Gutierrez's testimony or disqualification as counsel. These alternatives have been endorsed by courts. *See In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d at 245 & n. 2; *United States v. (Under Seal),* 774 F.2d at 628. For instance, in *In re Grand Jury Matter, supra,* the court said the following:

> "Quashing of a subpoena [to an attorney for a current client's fee information] on sixth amendment grounds requires that the prospective disqualification of the attorneys

---

**3.** The State observes that before Ms. Gutierrez might be required to testify, R.W. would have to be indicted, plead not guilty, proceed to trial, and Ms. Gutierrez would have to be subpoenaed. At least one court has made a similar observation. *See In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 245 (2d Cir.1985) ("Before disqualification can even be contemplated, the attorney's testimony must incriminate his client; the grand jury must indict; the government must go forward with the prosecution of the indictment; and ultimately, the attorney must be advised that he will be called as a trial witness against his client. As a court, we decline to speculate that all those events will occur."), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).

not be merely speculative. Merely speculative disqualification is shown when the material can be presented so as to avoid disqualification. In the present case, the government suggested various ways in which the disclosure could be made without requiring disqualification of the attorneys. Those methods appear reasonable and viable. As construed by the district court and the government, the subpoena only requested documents relating to fee arrangements. Compliance would not have required attorney disqualification." (Citation omitted).

926 F.2d at 351. *See also United States v. Grand Jury Matter*, 789 F.Supp. at 695 (Hargrove, J.) ("In the case at bar, no actual conflict exists. The attorney can avoid acting as a witness, and thus avoid disqualification in this case, by exercising one of many options available in providing the requested information. [The attorney] could provide the requested information through a records custodian from his law firm, bookkeeper or any other person capable of admitting the records as a custodian of records, or by stipulation."). It is perhaps noteworthy that Rule 3.7 of the Rules of Professional Conduct permits an attorney to testify and still represent a client at trial in four instances, including when the testimony relates to the nature and value of legal services rendered in the case. *See* Maryland Rule of Professional Conduct 3.7(a)(2). We find that compelling Gutierrez to furnish the grand jury with records of R.W.'s fee payments would not violate his constitutional right to counsel.

## IV.

### Possible Chilling Effect

Without attributing the holding to any particular constitutional protection or privilege, the court below based its stay, in part, on the "possible chilling effect" enforcement of the subpoena "could have" on the attorney-client relationship. In her brief and argument before this Court, Gutierrez expands on the trial court's holding and suggests that, even if the fee information is not privileged and supplying fee records

would not directly violate R.W.'s constitutional right to counsel, we still should not require disclosure. She reasons that because of the chilling effect on the attorney-client relationship, the client's resultant loss of trust in the attorney, and the attorney's duty of loyalty to a client, an attorney should not be required to furnish potentially damaging fee information about a current client. In a slightly different context, the Supreme Court stated that "counsel's duty of loyalty and his 'overarching duty to advocate the defendant's cause' ... is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth." *Nix v. Whiteside*, 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123, 134 (1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 694 (1984)).[4] An attorney's disclosure of potentially incriminating fee records may have some chilling effect on the attorney-client relationship, but that potential consequence alone will not justify refusal to comply with a lawful grand jury subpoena for non-privileged information. An attorney's refusal to call, at the request of a client, witnesses who will perjure themselves may also have a chilling effect on the attorney-client relationship, but an attorney's obligation to obey the law transcends the need to maintain a client's good will. *See, e.g., Nix, supra.* The grand jury's authority to require production of testimony and documents is limited only by a valid privilege established under the common law, statutes, or the Constitution. *See United States v. Calandra*, 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561, 570 (1974); *United States v. Dionisio*, 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67, 76–77 (1973). Since production of the attorney fee information does not violate the attorney-client privilege or the Sixth Amendment right to counsel, we decline to preclude grand jury access to relevant information based solely on counsel's duty of loyalty or a chilling effect on the attorney-client relationship.

---

4. *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) held that the Sixth Amendment right to assistance of counsel is not violated when an attorney refuses to cooperate with the client in presenting perjured testimony in the client's criminal trial.

By requiring attorneys to disclose fee information, it is doubtful that we will significantly deter criminal defendants from retaining counsel. As one author noted:

"If the individual already is known to the prosecution, the incentives to obtain counsel are going to be extremely strong. Few targets of grand jury investigations are likely to forego counsel simply out of fear that the prosecution will try to ascertain how much they are paying in legal fees. Even those who conclude that such information could be used as evidence of tax evasion or unexplained wealth indicative of other criminality are not likely to renounce legal counsel entirely. They may purchase less expensive legal advice and, in that sense, be deprived of counsel of their choice. But the right to counsel does not include the right to hire any lawyer at any price without any risk. The Supreme Court has upheld against Sixth Amendment attack fee forfeiture provisions that constitute a far more significant intrusion on a defendant's ability to hire counsel of choice.

\*    \*    \*    \*    \*    \*

For three reasons, I am not persuaded that this cost is terribly high. First, my guess is that given the option, most people will seek out the best available counsel and take their chances that fee arrangements will be disclosed. Second, although I place a premium on guaranteeing the right to obtain *adequate* legal counsel, I do not believe there is a corresponding right to obtain the best counsel money can buy. Finally, even if information concerning fee arrangements is disclosed, it is likely to be but one piece of incriminating evidence. Evidence of the client's overall lifestyle, including the value of his house, car, and personal effects, [is] likely to be more incriminating. In relatively few cases is the client likely to anticipate that the amount of money spent on legal services will prove crucial to the prosecution's case. Therefore, I believe that relatively few potential clients who are already known to the prosecution will be deterred entirely from seeking legal advice and that the cost associated with the decision by some to reduce their

consumption of legal advice is low. With regard to those persons already known to the prosecution, the balance of costs and benefits thus weighs heavily in favor of disclosure of fee arrangement information." (Footnotes omitted) (Emphasis in original).

Steven Goode, *Identity, Fees, and the Attorney–Client Privilege,* 59 Geo.Wash.L.Rev. 307, 349–50 (1991). Any "chilling effect" from requiring attorneys to disclose fee information would not justify extending the attorney-client privilege to permit the concealment of large expenditures which may be probative evidence of tax evasion by people suspected of being major drug dealers.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLEE.*

BELL, J., dissents.

BELL, Judge, dissenting.

Like the majority opinion, this dissenting opinion is merely an extension of my dissenting opinion in *In Re Criminal Investigation No. 1/242Q,* 326 Md. 1, 13, 602 A.2d 1220, 1226 (1992), with the exception of the observation that, "I told you so."

I dissent.