852 A.2d 82

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Dushan S. ZDRAVKOVICH.

Misc. AG No. 41, Sept. Term, 2002.

Court of Appeals of Maryland.

June 14, 2004.

**684**

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel for the Atty. Grievance Commission of Maryland, for Petitioner.

Carlton M. Green, College Park, for Respondent.

Argued Before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

HARRELL, Judge.

## I.

Respondent, Dushan S. Zdravkovich,[1] was admitted to the Maryland Bar on 1 November 1981. The Attorney Grievance Commission ("the Commission" or "Petitioner"), acting through Bar Counsel, filed a petition for disciplinary action against Respondent on 8 August 2002 after learning that he allowed his escrow account balance to drop below the value of the funds he had received and placed in trust in the account. The Commission alleged that Zdravkovich violated Maryland Rules of Professional Conduct (MRPC) 1.4,[2] 1.15, 8.1, 8.4(b), 8.4(c), and 8.4(d), as well as Maryland Code (1989, 2000 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article, and Maryland Rule 16–607.[3] Judge Michael E.

---

[1]. Respondent, according to the record, is also known professionally as "Dusko Zdravkovich" and "Duke Zdravkovich."

[2]. The hearing judge made no findings of fact regarding MRPC Rule 1.4, and the Commission filed no exception to the hearing judge's silence regarding that Rule. Accordingly, we do not address the Commission's allegations regarding MRPC Rule 1.4.

[3]. The relevant text of each of these rules of conduct, statute, and rule of procedure are referenced in the hearing judge's findings of fact and conclusions of law, *infra*.

Loney of the Circuit Court for Anne Arundel County, to whom we assigned this matter for hearing, made the following relevant findings of fact and conclusions of law (footnote renumbered):

### Findings of Fact and Conclusions of Law

"Although Respondent was accused of violations of the Rules of Professional Conduct arising out of a Complaint filed by Milton E. Siegert, Jr., no evidence was presented by Petitioner in that regard. However, the evidence presented indicates that during the investigation of the Siegert Complaint, Bar counsel learned as a result of examination of Respondent's subpoenaed bank records, of Respondent's apparent misappropriation of funds held by him on behalf of Charles Hunter, III. Petitioner requested Respondent to provide bank records regarding funds deposited by Hunter, but Respondent failed to respond. Thereafter, Petitioner subpoenaed the bank records. Since no complaint had been made by Hunter, but rather Hunter had been contacted by Petitioner in the course of a related investigation—Respondent moved to dismiss the Petition, which was held under advisement.

"The facts of the Hunter problem arise out of a very routine occurrence. On October 28, 1999, Hunter went to the Harley Davidson of Annapolis motorcycle dealership to take delivery of a new 2000 concord purple Harley Davidson FXDWG Wide Glide motorcycle, which he had ordered in July 1999. Hunter was prepared to pay the anticipated balance of the sales price in cash. Hunter indicated that he was an Oregon resident and that he should not pay Maryland sales tax. However, he declined to permit the sales personnel to photocopy his Oregon driver's license and the dealership refused to sell the motorcycle to him. Hunter protested loudly, refused to leave, and was arrested for trespassing after police were called. Such was the state of affairs when Hunter contacted Respondent—the employer of Hunter's girlfriend—for professional representation.

"After an initial consultation, it was agreed that Respondent would represent Hunter. The focus was on three matters. First, Respondent would defend Hunter on the criminal trespass charges in the District Court of Maryland. Second, Respondent would attempt to persuade the Harley Davidson dealership to complete the transaction and sell the motorcycle to Hunter and/or would file suit against the dealership for specific performance. Third, if successful in the defense of the criminal case, Respondent would file suit on behalf of Hunter against the Harley Davidson dealership for malicious prosecution. No written fee agreement was prepared. However, Respondent followed up with a letter on November 5, 1999, which outlined the strategy and anticipated fee. In brief, Respondent stated that he agreed to represent Hunter for fixed fees of $1,500.00 in the criminal matter, $3,500.00 in the specific performance case, and $5,000.00 for the malicious prosecution case. No specifics were discussed and no agreement was made with regard to payment of costs. Hunter never signed the letter or any other fee agreement. However, at that time, Hunter paid $1,500.00 to Respondent for representation in the criminal case and $15,552.00 (which represented Hunter's assertion of the balance of the price of the motorcycle), which was deposited in Respondent's Attorney Trust Account.

"Respondent immediately took action on behalf of Hunter. He entered his appearance in the criminal case and communicated with the Harley Davidson dealership through counsel in an effort to complete the transaction and offered to pay the $15,552.00 which was represented to be in his escrow account. Thereafter, he promptly filed suit for specific performance on November 30, 1999, paid the filing costs, and continued negotiations on behalf of Hunter. Respondent did not keep time records or otherwise document the sequence of his representation of Hunter. The efforts to negotiate the purchase were not successful and eventually Respondent petitioned the [Circuit Court for Anne Arundel County] to deposit Hunter's $15,552.00 with the Clerk of Court (which was denied). Respondent later refunded the

$15,552.00 to Hunter. Thus, he never received a fee for services rendered in the specific performance case or for costs advanced by him. Respondent represented Hunter in the criminal trial before the District Court, which resulted in a probation before judgment being entered, which was accepted by Hunter.[4]

"In the course of its examination of Respondent's trust account records regarding the Siegert Complaint, Petitioner observed the deposit of $15,552.00 which was made on November 6, 1999. It was apparent that almost immediately thereafter the balance in the trust account was reduced substantially below the amount which had been deposited by Hunter. It was apparent that Respondent had invaded the account and that $9,292.11 may have been misappropriated. Subsequently, deposits were made to the account as a result of a check from Respondent's son in the amount of $8,000.00 on April 1, 2000 and from Respondent's operating account in the amount of $1,400.00 on April 13, 2000. A check for $15,552.00 was disbursed to Hunter on April 12, 2000. *See* Exhibits 15 and 22.

"In this case, no complaint was made by a victim to the Attorney Grievance Commission. The investigation of Respondent with regard to Hunter came about because Petitioner was in the process of investigating a prior complaint from Siegert and bank escrow records indicated a large deposit—later determined to be that from Hunter—and an apparent immediate diminishment of those funds. For that reason, Respondent argues that the matter should be dismissed as to him. Rule 16–704(b) provides that Bar counsel shall "investigate all matters involving possible misconduct called to his attention whether by complaint or otherwise." Under the Rule, Bar counsel had the authority to investigate possible misconduct from whatever source and had the duty to do so when confronted with an apparent violation of

---

4. "Hunter does not recall if there was a trial or of the matter proceeded on a statement of facts, or if Respondent represented him at the hearing."

the Rules of Professional Conduct while in the process of investigating another complaint against the same attorney.

"Respondent did not adequately explain the terms of the fee arrangement to his client and did not prepare a written fee agreement, which contributed to the eventual breakdown of confidence in Respondent by his client and the eventual termination of the attorney/client relationship. That is regrettable because Respondent did perform professional services for Hunter. He expended time and effort in the representation of Hunter in the criminal matter, which resulted in a disposition of probation before judgment, which was accepted by Hunter. The fee of $1,500.00 for representation in the criminal matter was reasonable, was agreed to by the client, and was earned by Respondent. Respondent also used his efforts to attempt to accomplish the purchase of the motorcycle on behalf of Hunter although he was not successful in persuading the dealership to complete the transaction. It is evident that the behavior of Hunter at the dealership and the manner of negotiation persuaded the dealership not to change its mind in its decision not to do business with Hunter. In addition, Respondent was diligent in promptly filing suit for specific performance on behalf of Hunter. The complaint was filed promptly and capably. Hunter was competently represented by Respondent in the matter. In hindsight, it is clear that Respondent did not adequately communicate with Hunter to explain the cause of action available to him and to discuss reasonable expectations. Thus, it was in March 2000 that Hunter terminated Respondent's representation of him notwithstanding the fact that Respondent had provided professional services to Hunter, had expended costs on his behalf, and had not been paid for his representation in the civil matter. In short, after five months, Hunter was dissatisfied because he had not yet won and fired his attorney. His expectations were not reasonable.

"From the evidence, the Court concludes that the parties agreed to a fee of $1,500.00 for representation in the criminal case and that Hunter's $15,552.00 would be placed in

Respondent's trust account to be used to complete the purchase of the motorcycle. The $15,522.00 was intended solely for that purpose. It was offered to the Harley Davidson dealership and subsequently Respondent offered to pay it into Court. Notwithstanding the fact that the $15,522.00 was to be used for that purpose, Respondent's bank records show that the funds were improperly diminished and were not available when offered by Respondent on behalf of his client to the dealership and to the Court.

"It is, based upon the facts set forth above, the conclusion of this Court that the Respondent violated the following Rules of Professional Conduct:

### "Rule 8.1 Bar Admission and Disciplinary Matters

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

"When Respondent came under suspicion in the course of the Siegert investigation, Bar counsel requested him to provide [ ] information regarding the trust account. Respondent did not respond. He did nothing. As a result, Bar counsel issued an appropriate subpoena to Respondent's bank and completed the investigation by acquiring records of the account, which indicated an invasion of Hunter's escrowed funds (Exhibit 15). Respondent now argues that he refused because Hunter had not filed a complaint.

"Rule 8.1(b) provides an exception to that rule where disclosure of information is otherwise protected by Rule 1.6: Confidentiality of information.

### "Rule 1.6(b)

"(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

"(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim, or disciplinary complaint against the lawyer based upon conduct in which the client was involved or to respond to allegations in any proceedings concerning the lawyer's representation of the client.

"At the December 17, 2003 evidentiary hearing, Charles Hunter, III testified he was not waiving his attorney-client privilege. No evidence was presented that justified a basis for refusing to provide the requested information based on Rule 1.6. Therefore, the Court ruled that Respondent's testimony regarding the Hunter matter would not violate the attorney-client privilege.

"The Court finds by clear and convincing evidence that Respondent violated Maryland Rule of Professional Conduct 8.1(b) by knowingly failing to respond to a lawful demand for information from a disciplinary authority. The Court further finds that it was appropriate for Bar counsel to investigate under such circumstances—when presented with an apparent violation of professional conduct while in the process of investigating a complaint by another client of the same attorney. To have done otherwise would have been to ignore an apparent violation.

"**Rule 1.15 Safekeeping Property**

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to [Title 16, Chapter 600] of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

## "8.4 Misconduct

"It is professional misconduct for a lawyer to:

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice;

"The Respondent also violated the following section of the Business Occupations and Professions Article:

## " § 10–306 [of the Business Occupations and Professions Article] Misuse of Trust Money

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

"The Respondent also violated the following Maryland Rule:

## "Rule 16–607 Commingling of Funds

"(a) General Prohibition

"An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be deposited by section b of this Rule.

"(b) Exceptions.

"1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service

charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

"2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

"The trust account records are persuasive and clearly show what happened to the Hunter funds. Very soon after they were deposited in Respondent's trust account, disbursements were made from the account on other unrelated matters, which caused the balance to be reduced to $6,259.89. Thus, when Respondent wrote to the Harley Davidson dealership on behalf of Hunter and offered to pay $15,552.00 for the motorcycle, Respondent did not have that amount in his escrow account. Likewise, when he petitioned the Court to deposit the funds on behalf of Hunter, he did not have them in his account. When things turned sour between Respondent and Hunter, Respondent obtained funds from his son ($8,000.00) and deposited $1,400.00 of personal funds, which enabled him to refund the escrowed funds to Hunter.

"Respondent now argues that he made a mistake when he inadvertently overpaid on a claim from the trust account to Erma Assberry, Esq. ($1,000.00) on behalf of another client. More importantly, he now contends that he had authority from Hunter to withdraw the funds to pay fees owed to him for professional services rendered on behalf of Hunter whenever Respondent believed that they were due and owing. According to Respondent, he could draw from Hunter's $15,552.00 escrow funds whenever he wanted because of the fee agreement that he had with Hunter. Hunter unequivocally denies and disputes any such agreement or authorization. He confirms and the Court finds that the $15,552.00 was to be used solely for the purchase of the motorcycle. As indicated above, no such agreement was reduced to writing or adequately agreed to by Respondent and Hunter. It was the duty and responsibility of Respondent to clearly articulate the fee arrangement with his client and to insure that it was agreed to an understood by both parties. He failed to do so and failed to keep separate the funds of himself and his client. Thus, Respondent invaded the escrowed funds of his client and used them for purposes other than the client's.

"The Court finds by clear and convincing evidence that Respondent violated the Maryland Rules of Professional Conduct. 1.15(a), (b), 8.4(b), (c), (d), Md.Code Ann., Bus. Occ. & Prof. § 10–306 and Rule 16–607."

## II.

The Court of Appeals exercises original jurisdiction over attorney discipline proceedings. *Attorney Griev. Comm'n v. Stolarz,* 379 Md. 387, 397, 842 A.2d 42, 47 (2004).

"We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. We will not disturb the factual findings of the hearing judge if they are based on clear and convincing

evidence. Our review of the hearing judge's conclusions of law is de novo.

"Maryland Rule 16–757(b) [5] requires the Commission to prove the averments of the complaint by clear and convincing evidence. Respondent must only establish an affirmative defense or a matter of mitigation or extenuation by a preponderance of the evidence. Maryland Rule 16–759 requires this Court, when exceptions to the hearing judge's findings are taken properly, to determine whether the findings of fact have been proven by the requisite standards of proof set out in Rule 16–757(b).[6]

"The hearing judge as the trier of fact may elect to pick and choose which evidence to rely upon. Deference to the hearing judge's factual findings is paid by us, in part, because the fact finder is in the best position to assess first hand a witness's credibility."

*Stolarz,* 379 Md. at 397–98, 842 A.2d at 47–48 (citations omitted and footnotes re-numbered).

## III.

The Commission filed no exceptions to the hearing judge's findings and conclusions. Respondent filed eight exceptions:

---

**5.** Maryland Rule 16–757(b) provides:

"The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence."

**6.** Maryland Rule 16–759(b) states:

"(1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

Exceptions One through Four

Respondent's first four exceptions [7] each challenge the hearing judge's finding that Respondent "invaded the account and that $9,292.11 may have been misappropriated." While we agree that Respondent's intentional misappropriation of the specific amount of $9,292.11 is not supported by clear and convincing evidence, we do find that the hearing judge had before him enough evidence to find, by a clear and convincing standard, that Respondent intentionally misappropriated most of that amount.

The hearing judge had sufficient evidence before him to conclude that the $15,552.00 remained Hunter's property, to be held in trust by Respondent, until it was repaid by Respondent.[8] Hunter testified that the $15,552.00 he gave to Respon-

---

7. Respondent's exceptions numbered one through four read as follows:

"Exception 1: The record clearly shows there was no misappropriation of client funds by the Respondent. The hearing judge erred in finding a misappropriation of client funds.

"Exception 2: The $1,000 over-disbursement to Erma Assbury was not a misappropriation.

"Exception 3: The hearing judge erred when he ruled none of the withdraw[als] from the escrow account related to Hunter.

"Exception 4: There was no violation of [Maryland Code (1989, 2000 Repl.Vol.) § 10–306 of the Business Occupations and Professions Article]."

8. Neither the Commission nor Respondent raised the issue of the interest earned on the funds held in trust. The bank records indicate that Respondent's escrow account was an interest-bearing account. Maryland Rule 16–608(a) reads:

Any interest paid on funds deposited in an attorney trust account, after deducting service charges and fees of the financial institution, shall be credited and belong to the client or third person whose funds are on deposit during the period the interest is earned, except to the extent that interest is paid to the Maryland Legal Services Corporation Fund as authorized by law. The attorney or law firm shall have no right or claim to the interest.

Respondent repaid Hunter's $15,552.00 without accounting for the interest earned on those funds. We do not consider this point, however, in determining the proper sanction because it was not mentioned in the petition and "due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin." *See Attorney Griev. Comm'n v. Seiden,* 373 Md. 409,

dent by check was intended to serve as the purchase price for the motorcycle, should Respondent be successful in his negotiations with the Harley Davidson dealership or in petitioning to place those funds in escrow with the Circuit Court for Anne Arundel County in the specific performance action. The hearing judge was not convinced by any of the scant evidence Respondent presented that this understanding was altered at any time or that the money was meant originally to be used for some other purpose. Generally we defer to the hearing judge on questions of witness credibility. We see no reason to do otherwise here.

■ Given the finding that the $15,552.00 remained Hunter's property until it was returned to him, Respondent's escrow account bank records serve as *prima facie* evidence of misappropriation. *Attorney Griev. Comm'n v. Glenn,* 341 Md. 448, 472, 671 A.2d 463, 475 (1996) ("The mere fact that the balance in an attorney trust account falls below the total amounts held in trust supports a *prima facie* finding of violation of the rule."). Those records indicate that the escrow account balance dropped to $6,259.89 just prior to Respondent returning Hunter's money to him, and that Respondent replaced the missing $9,292.11 by depositing a check for $8,000 from his son and another for $1,400 from his operating account. Respondent did not provide a satisfactory explanation for why his escrow account balance fell below the level of the funds that were to be held in trust.

■ The balance in Respondent's escrow account, which was $5,500.08 just before Respondent deposited Hunter's $15,552.00 check on 6 November 1999, initially dropped to $14,552.08 on 12 November 1999 when Respondent disbursed $6,500 to Erma Assbury. Respondent testified that he made a $1,000 mistake by that disbursement; rather, he owed her only $5,500 on an unrelated matter. According to Respondent, this $1,000 error should not be regarded as misappropri-

418, 818 A.2d 1108, 1113 (2003) (citing *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968)).

ation or, if it were deemed such, it was not intentional. This argument indicates initially some confusion about the meaning of the word misappropriation. "Misappropriation is any unauthorized use by an attorney of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit." *Glenn,* 341 Md. at 484, 671 A.2d at 481. The testimony, if believed, that the $1,000 over-disbursement was unintentional, and that Respondent did not benefit personally, does not negate the fact that Respondent committed misappropriation by allowing his escrow account balance to drop below the value of the funds to be held in trust therein. We have held, however, that unintentional or negligent misappropriation is a less grievous offense than intentional misappropriation. *Attorney Griev. Comm'n v. Cafferty,* 376 Md. 700, 724–5, 831 A.2d 1042, 1057 (2003). The record is silent as to any evidence contradicting Respondent's testimony regarding the Erma Assbury disbursement. The hearing judge reported Respondent's testimony regarding the Erma Assbury disbursement, but made no findings of fact specific to that disbursement and did not indicate whether he found Respondent's testimony regarding the Erma Assbury disbursement to be credible or not. Thus, for the purposes of determining the proper sanction *infra,* we shall consider this $1,000 misappropriation to be an unintentional, negligent one, rather than intentional misappropriation.

Respondent's subsequent disbursements, which reduced the funds held in the escrow account to $6,259.89 by 1 April 2000, cannot be accounted for similarly. The bulk of those withdrawals came in the form of a series of transfers of funds in amounts between $1,000 and $2,000 to Respondent's law firm operating account. For example, the last of these was a transfer of $1,000 from the escrow account to the operating account that Respondent authorized by telephone on 25 February 2000. After that withdrawal, the amount held in trust in the escrow account never rose above $6,300, with the exception of three days in March 2000 when Respondent deposited and then withdrew $50,000 from the account.

██ Respondent's explanation for the $1000 to $2000 with-drawals is that he and Hunter agreed that the $15,552.00 was held in the nature of a retainer, and that those withdrawals were money Respondent earned by representing Hunter in the various matters. The hearing judge, however, apparently credited Hunter's testimony that they had never come to such an understanding. As previously noted, we are loath general-ly to override a hearing judge's determination regarding the credibility of witnesses. We do not do so here. Moreover, Respondent's claim is inconsistent with his further testimony. Respondent repaid Hunter the $15,552.00 when requested to do so. An attorney who had earned the funds as fees, which he had withdrawn from the account, very likely would have attempted to keep what he had earned. We conclude that Respondent intentionally misappropriated those funds when he transferred them to his operating account without Hunter's permission. We deny Respondent's exceptions numbered one through four.

Exception Five

Respondent argues that, "in the absence of a complaint by Hunter, the Attorney Grievance Commission's actions in this case were improper." Respondent does not argue that the Commission lacked the ability to investigate him even though no complaint was filed, acknowledging that "Bar Counsel, subject to supervision by the Commission, is to investigate all matters involving possible misconduct called to his attention by complaint *or otherwise.*" (emphasis added).[9] Respondent

---

9. This quote from Respondent's brief is derived from the language of former Maryland Rule 16–704. At other times Respondent cites former Rules 16–702, 16–706, and 16–708. The Commission, in its Petition for Disciplinary action, cites Rule 16–707. Title 16, Chapter 700 of the Maryland Rules does not currently contain any Rule 16–702, 16–704, 16–706, 16–707 or 16–708. Chapter 700 (governing attorney grievance matters) was repealed and re-enacted effective 1 July 2001. *See* Order Adopting Rules of Practice and Procedure (30 November 2000), *reprint-ed in* Md. Rules, Vol. 1, at 55–56 (2004). Rules 16–702, 16–704, 16–706, 16–707, and 16–708 were not re-enacted with the other Chapter 700 rules. That Rules Order provided that any Attorney Grievance case that was before an Inquiry Panel, Review Board, or the Court of

claims, however, that the Commission committed three improper actions: (1) breaching the confidentiality of the investigation by speaking to Hunter; (2) allowing the Commission's investigator, rather than Bar Counsel, to request information from Respondent and Respondent's bank; and (3) requesting Respondent's bank information and then obtaining it by subpoena before filing a complaint.

The argument that the Commission breached the confidentiality of the investigation by speaking to Hunter is spurious. The Commission's work must be kept confidential. Rule 16–723. *See also* former Rule 16–708 (repealed 30 November 2000, effective 30 June 2001). Respondent seems to suggest that each time an investigator asks questions of a witness the investigator breaches these confidentiality requirements. Such a rule would limit seriously Attorney Grievance investigations and was not what this Court intended when it adopted Rule 16–723 or former Rule 16–708. The Commission did not disclose any confidential information to Hunter. Hunter merely was asked questions about the trust funds. The fact that he may have drawn the inference that Respondent was under investigation does not render the Commission's investigation a breach of confidentiality.

Respondent argues that "[t]he investigator for Bar Counsel, not Bar Counsel, made the request for the Respondent's escrow account bank records" and that Respondent was

---

Appeals prior to 1 July 2001 would continue to be bound by the former rules. This case was not before this Court before the cut-off date; the Commission filed its complaint against Respondent on 8 August 2002. It is not clear from the record before us whether this case was submitted to an Inquiry Panel or Review Board before the cut-off date. We infer from each party's use of the former rules no longer in effect that this case was before one of those bodies prior to the cut-off date, and that therefore the former rules continue to apply. We therefore analyze Respondent's exceptions based on the former rules, and not the current rules. We note, however, that the ultimate result in this case would be the same regardless of which set of rules we applied.

The portion of former Rule 16–704 cited by Respondent was replaced by current Rule 16–712(b)(1) ("Subject to the supervision and approval, if required, of the Commission, Bar Counsel has the powers and duties to . . . investigate professional misconduct or incapacity.").

therefore not required to comply. Bar Counsel is explicitly authorized to "employ attorneys, investigators, and staff personnel as authorized by the Commission at the compensation set forth in the Commission's budget." Rule 16–712(b)(9). *See also* former Rule 16–704(b)(iv) (repealed 30 November 2000, effective 30 June 2001). Nothing in the Maryland Rules prohibits Bar Counsel from delegating appropriate authority to his investigatory employees. Respondent did not respond to the request made by the investigator employed by the Commission, nor did he make any attempt to determine whether the investigator was acting as the agent of Bar Counsel or of the Commission. Respondent may have been entitled to request confirmation that the investigator's request was a lawful demand from a disciplinary authority, but he was not entitled to ignore it altogether. *See* MRPC Rule 8.1. *See also* the discussion of exception seven, *infra.*

■ As previously noted, the Commission first became aware of potential problems related to Respondent's representation of Hunter during the course of its investigation of a complaint filed by a Mr. Siegert. Hunter did not file any complaint, nor was any complaint ever filed in reference to the funds held in trust for Hunter. Respondent claims that the Commission should not have issued a subpoena to his bank without a complaint specific to the conduct, related to Hunter, that it was investigating at the time. He bases this argument on former Rule 16–704(c), governing subpoenas: *"After a complaint has been filed,* and with the prior written approval of the Chair or Acting Chair of the Commission, Bar Counsel may issue a subpoena to compel the production of designated documents or other tangible things at a time and place specified in the subpoena." Former Rule 16–704(c)(1) (emphasis added).[10] Respondent was aware that the Siegert complaint had been filed against him. He also was aware that the Commission was investigating the Hunter matter because the

---

10. Subpoenas for Attorney Grievance investigations are currently governed by Rule 16–732. Rule 16–732 does not provide that a subpoena may only be issued after a complaint has been filed.

Commission earlier requested, in a 22 November 2000 letter to him, the precise information that it later received from the bank. Respondent has not alleged any prejudice from the Commission's action in this regard. If Respondent objected to the Commission's subpoena of his bank records, the proper time for action was in November 2000.

We deny Respondent's exception five.

Exception Six

 Respondent alleges that the hearing judge was biased against him. He bases this on the fact that the hearing judge "considered *ex parte* the Petitioner's Requests for Admissions and accepted verbatim the allegations of Bar Counsel in both the Siegert complaint and the Hunter matter" and "the Hearing Judge gives no credence to the Respondent's testimony, the documentary evidence and the record that shows a total absence of any intent to misappropriate [Hunter's] money."

The hearing judge accepted the Commission's requests for admissions *ex parte* on 18 December 2002 because Respondent chose to walk out of those proceedings. *See Attorney Griev. Comm'n v. Zdravkovich*, 375 Md. 110, 118, 825 A.2d 418, 422 (2003). It is pure chutzpah for Respondent to complain now that the hearing judge did not hear him out on that occasion. The fact that the hearing judge found Respondent's testimony not to be credible, and found the evidence presented by the Commission to be credible, is no basis for a finding that the hearing judge was biased.

We deny Respondent's exception six.

Exception Seven

Respondent's seventh exception is "there was no violation of Rule 8.1." Respondent failed to respond to the Commission's request for his escrow account bank records. His responses to the Commission's previous requests for information had been, in the words of the Assistant Bar Counsel assigned to the case, "flagrantly devoid of any information upon which I might draw to reach any conclusions about the allegations against you." Letter from John C. Broderick, Esq., Assistant

Bar Counsel, to Dushko S. Zdravkovich (12 April 2002) (admitted before the hearing judge as Petitioner's Exhibit 3).

 Respondent argues now that any disclosure on his part would have harmed materially his client, Hunter. Respondent does not explain how this disclosure would have harmed Hunter's interests. Respondent was aware that a failure to disclose the information could lead to the issuance of a subpoena to his bank. If, in fact, some harm could have come to Hunter through the disclosure, then Respondent had a duty to inform the Commission of that fact so that some alternative method could have been crafted for determining whether misappropriation had occurred. Respondent waived the argument by failing to respond in a timely manner.

We deny Respondent's exception seven.

Exception Eight

 Respondent argues that "the charges of ethical violations in the Hunter matter should be dismissed in the absence of a client complaint to the Attorney Grievance Commission and when there is no waiver by the client of the attorney-client privilege." As already noted, *supra*, in the discussion of his fifth exception, Respondent recognizes that the Maryland Rules empower Bar Counsel to investigate "all matters involving possible misconduct called to his attention by complaint or otherwise." The absence of a client complaint alleging the specific misconduct for which the Commission seeks to sanction Respondent is no basis for the dismissal of that petition.

 Escrow account bank records are not subject to the confidentiality requirements of MRPC Rule 1.6 or to the attorney-client privilege. In *In re Criminal Investigation No. 1/242Q,* 326 Md. 1, 602 A.2d 1220 (1992), we explained that the attorney-client privilege does not normally bar disclosure of attorney fee payment information related to an attorney's former clients.[11] *See also In re Criminal Investigation No.*

---

11. In the same case we explained the distinction between an attorney's duties under MRPC Rule 1.6 and the attorney-client privilege. That

*1/296X,* 336 Md. 1, 646 A.2d 389 (1994) (extending the same rule to current clients of the attorney). "The overwhelming weight of authority holds that the attorney-client privilege is generally not violated by requiring disclosure of the payment of attorney's fees and expenses." *In re Criminal Investigation No. 1/242Q,* 326 Md. at 7, 602 A.2d at 1222. Bank statements, which are not communications between an attorney and a client, merely provide the type of attorney fee payment information that we have held to be exempt from the attorney-client privilege and MRPC Rule 1.6. That certain types of financial records are subject to disclosure to the Commission is evidenced by Maryland Rules 16–610(b)(1)(E) (requiring banks to "[a]llow reasonable access to all records of an attorney trust account if an audit of the account is ordered") and 16–722 (providing for audits of an attorney's financial records). *See also* former Rule 16–718 (repealed 30 November 2000, effective 30 June 2001) (providing for audits similar to those currently allowed by current Rule 16–722). The disclosure of Respondent's escrow account records was not a breach of the confidentiality requirements of MRPC Rule 1.6 or of the attorney-client privilege.

We deny Respondent's exception eight.

## IV.

 After reviewing the record, we find sufficient evidence to support, by a clear and convincing standard, the hearing judge's findings of fact. Hunter testified that he gave Respondent the $15,522.00 to hold in trust and to use as the purchase price for a motorcycle. The escrow account records demonstrate that Respondent repeatedly invaded Hunter's funds held in trust and then scrambled to add, at the eleventh hour, enough cash to the escrow account to allow him to return Hunter's money to him. Respondent provided no adequate explanation for these actions. This conduct amount-

---

distinction is not relevant to this case because the result is the same whether we analyze the issue based on the confidentiality requirements of MRPC Rule 1.6 or based on the attorney-client privilege.

ed to intentional misappropriation,[12] misuse of trust funds, and commingling of funds in direct violation of MRPC Rule 1.15, § 10–306 of the Business Occupations and Professions Article, and Maryland Rule 16–607. Intentional misappropriation is also a violation of MRPC Rules 8.4(b), 8.4(c), and 8.4(d). *See Attorney Griev. Comm'n v. Herman*, 380 Md. 378, 402, 844 A.2d 1181, 1196 (2004). When asked to supply bank records and other information to the Commission, Respondent violated MRPC Rule 8.1 by at times giving insufficient responses and at other times failing to respond at all.

██ Having concluded that Respondent violated MRPC Rules 1.15, 8.1, 8.4(b), 8.4(c) and 8.4(d) as well as Maryland Code (1989, 2000 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article, and Maryland Rule 16–607, we must determine the proper sanction. Under the Maryland Rules of Professional Conduct, the purpose of attorney discipline is not to punish the lawyer, but to deter misconduct and to protect the public and the public's confidence in the legal profession. *Attorney Griev. Comm'n v. Post*, 379 Md. 60, 70, 839 A.2d 718, 724 (2003). "[T]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.*

██ Although in this case the client suffered no actual financial loss, "misappropriation is a most egregious violation even without actual loss, because the failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer. The rule is concerned with the risk of loss, not only the actual loss." *Glenn*, 341 Md. at 489, 671 A.2d at 483. Intentional misappropriation of funds entrusted to an attorney's care "is an act infected with deceit and dishonesty and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Griev. Comm'n v. Spery*, 371 Md. 560, 568, 810 A.2d 487, 491–

---

12. As noted previously, *supra*, 381 Md. at 696–97, 852 A.2d at 91–92, the $1,000 overpayment to Ms. Assbury is deemed an unintentional misappropriation for sanctioning purposes.

92 (2002). *See also Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 413, 773 A.2d 463, 485 (2001). We find no such compelling extenuating circumstances here. Respondent, who has in previous cases been reprimanded and indefinitely suspended by this court, *see Attorney Griev. Comm'n v. Zdravkovich,* 362 Md. 1, 762 A.2d 950 (2000), presented no plausible evidence of mitigating circumstances. The appropriate sanction is disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DUSHAN S. ZDRAVKOVICH.*

ELDRIDGE, Judge, dissenting.

Under all of the circumstances of this case, I believe that disbarment is an unduly harsh sanction. I would impose a suspension.