# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 19, 2010 Decided February 11, 2011

No. 10-7061

IN RE: DUSHAN ZDRAVKOVICH,
RESPONDENT

*Christopher A. Teras* argued the cause and filed the brief for respondent.

Before: GINSBURG, TATEL, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The Court of Appeals of Maryland has disbarred attorney Dushan S. Zdravkovich for intentional misappropriation of client trust funds. Zdravkovich is a member of this court's bar. Pursuant to our Rules of Disciplinary Enforcement, we conclude that identical discipline is warranted, and we therefore order Zdravkovich disbarred from the practice of law before the District of Columbia Circuit.

I

The representation that led to Zdravkovich's Maryland disbarment stemmed from an altercation at a motorcycle dealership. On October 28, 1999, Charles Hunter, III attempted to take delivery of a motorcycle from a Harley Davidson dealership in Annapolis, Maryland. After a dispute arose over the payment of sales tax, the dealership refused to sell Hunter

the motorcycle. Hunter protested, refused to leave, and was arrested for trespassing. He then hired Zdravkovich -- for whom Hunter's girlfriend worked as a secretary -- to represent him in the criminal trespass matter and to obtain specific performance on the motorcycle sale. Zdravkovich also agreed to represent Hunter in a suit against the dealership for malicious prosecution if Zdravkovich succeeded in defending the criminal case. *See Attorney Grievance Comm'n v. Zdravkovich*, 852 A.2d 82, 85 (Md. 2004).

On November 5, 1999, Zdravkovich sent Hunter a letter outlining anticipated fees of $1,500 for the criminal representation, $3,500 for the specific-performance case, and $5,000 for the malicious-prosecution case. Hunter never signed that letter or any other fee agreement. Instead, Hunter paid Zdravkovich $1,500 for the criminal case and gave him $15,552, the purchase price Hunter believed he was entitled to pay for the motorcycle. Zdravkovich deposited the $15,552 in his attorney trust account on November 6, 1999. *See id.* at 85-86.

Zdravkovich proceeded to represent Hunter in a criminal trial, which resulted in a disposition of probation before judgment. Zdravkovich also negotiated with the Harley Davidson dealership, offering to pay $15,552 to complete the transaction. When those negotiations failed, he filed suit for specific performance and petitioned, unsuccessfully, to deposit the $15,552 with the clerk of the court in which he filed the suit. Frustrated that Zdravkovich had been unable to complete the sale, Hunter terminated the representation in March 2000. On April 12, 2000, Zdravkovich refunded the full $15,552 at Hunter's request. *See id.* at 85-87.

In late 2000, Maryland Bar Counsel subpoenaed Zdravkovich's trust account records as part of its investigation into an unrelated complaint against him. In the course of that

investigation, Bar Counsel discovered that Zdravkovich had allowed his trust account balance to drop substantially below $15,552 almost immediately after he deposited Hunter's funds. Specifically, Zdravkovich withdrew $1,000 of those funds on November 12, 1999 to pay another lawyer who had no connection to the Hunter matters. Then, between November 18, 1999 and February 25, 2000, he made a series of electronic transfers from the escrow account to his operating account. By February 25, Zdravkovich had withdrawn a total of $9,292.11 of the funds. When Hunter demanded his money back, Zdravkovich replenished the trust account with a check from his son for $8,000 on April 1, 2000, and with an additional $1,400 from his operating account on April 13, 2000. *See id.* at 86; *Attorney Grievance Comm'n v. Zdravkovich*, 825 A.2d 418, 424 (Md. 2003).

The Attorney Grievance Commission of Maryland filed a petition for disciplinary action against Zdravkovich on August 8, 2002. The Maryland Court of Appeals assigned the matter to Judge Michael E. Loney of the Circuit Court for Anne Arundel County, who held a hearing on December 17, 2003. Judge Loney confirmed the facts recited above. *See Zdravkovich*, 852 A.2d at 84-90 (quoting Judge Loney's findings of fact and conclusions of law). He also found that, when Zdravkovich offered to pay $15,552 to the dealership and then to the clerk of court, there were insufficient funds in the trust account to cover the payment. *Id.* at 89. Judge Loney did not credit Zdravkovich's contention that Hunter had authorized him to withdraw funds from the trust account to pay legal fees and expenses. Instead, he credited Hunter's testimony that "unequivocally denie[d] . . . any such . . . authorization" and confirmed "that the $15,552 was to be used solely for the purchase of the motorcycle." *Id.*

Judge Loney concluded that Zdravkovich had "invaded the escrowed funds of his client and used them for purposes other than the client's," and he found by clear and convincing evidence that this conduct amounted to misappropriation, misuse of trust funds, and commingling of funds in violation of Maryland Rules of Professional Conduct 1.15(a) and (b), § 10-306 of the Maryland Business Occupations and Professions Article, and Maryland Rule 16-607. *Id.* at 88-91. Judge Loney further concluded that Zdravkovich's conduct "reflects adversely on [his] honesty, trustworthiness or fitness as a lawyer," Md. R. Prof. Conduct 8.4(b), "involv[ed] dishonesty, fraud, deceit or misrepresentation," Md. R. Prof. Conduct 8.4(c), and "[was] prejudicial to the administration of justice," Md. R. Prof. Conduct 8.4(d). *Id.*[1]

Zdravkovich filed exceptions to Judge Loney's findings and conclusions with the Maryland Court of Appeals. Deferring to Judge Loney's credibility determinations, the Court of Appeals held that the evidence supported Judge Loney's finding that the parties intended the $15,552 to be used solely for completing the purchase of the motorcycle, not for payment of attorney fees or expenses. *Zdravkovich*, 852 A.2d at 92. It also concluded that, with respect to all but $1,000 of the misappropriated funds, the evidence was sufficient to find, by a clear and convincing standard, that the misappropriation was intentional. *Id.* In Maryland, intentional misappropriation is cause for disbarment absent "compelling extenuating circumstances." *Id.* at 96 (internal quotation marks omitted). Noting that Zdravkovich had previously been reprimanded and indefinitely suspended in an unrelated matter, the Court of Appeals ordered him disbarred

---

[1]Judge Loney also found that Zdravkovich violated Maryland Rule of Professional Conduct 8.1(b) by knowingly failing to respond to Bar Counsel's lawful demand for information regarding his trust account. *Zdravkovich*, 852 A.2d at 88.

from the practice of law in Maryland. *Id.* On February 2, 2006, the District of Columbia Court of Appeals imposed reciprocal and identical discipline. *See In re Zdravkovich*, 891 A.2d 258 (D.C. 2006).

On February 5, 2007, we issued an order directing Zdravkovich to show cause why imposition of identical discipline by this court would be unwarranted. After Zdravkovich answered, we discharged that order and referred the matter to the circuit's Committee on Admissions and Grievances. In January 2010, after reviewing Zdravkovich's brief and evidentiary submissions, the Committee recommended that we impose reciprocal and identical discipline. Thereafter, we ordered the case scheduled for oral argument.

II

A member of this court's bar who "has been suspended or disbarred from practice in any other court" is subject to reciprocal discipline in this court. Fed. R. App. P. 46(b)(1)(A). In reciprocal discipline cases, we must undertake an "intrinsic consideration of the state record," *Selling v. Radford*, 243 U.S. 46, 51 (1917), recognizing that a state court's decision to impose a particular sanction "is not conclusively binding on the federal courts," *In re Ruffalo*, 390 U.S. 544, 547 (1968). Nevertheless, the state court's substantive findings are entitled to a high degree of respect. *Theard v. United States*, 354 U.S. 278, 282 (1957). Rule IV(c) of our Rules of Disciplinary Enforcement reflects these principles. Under Rule IV(c), "this Court shall impose the identical discipline" imposed by the other court "unless the attorney demonstrates that, or this Court is satisfied" that:

> (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or

(3) the imposition of the same discipline by this Court would result in grave injustice; or

(4) the misconduct warrants substantially different discipline.

D.C. Cir. Rules, App. II, Rule IV(c) (hereinafter D.C. Cir. Rule (IV)(c)); *cf. Selling*, 243 U.S. at 51 (setting forth similar criteria for the imposition of reciprocal discipline by the Supreme Court). This standard is narrow, for "we are not sitting as a court of review to discover error in the [hearing judge's] or the [state] courts' proceedings." *In re Sibley*, 564 F.3d 1335, 1341 (D.C. Cir. 2009). And the "burden of showing why the court should not impose reciprocal discipline rests with [the attorney]." *Id.* at 1340.

Zdravkovich seeks to stave off the imposition of identical discipline on the basis of each of Rule IV(c)'s four exceptions. We consider those exceptions in order.

1. Zdravkovich contends that Maryland's attorney disciplinary system violates due process "because the Maryland Court of Appeals is centrally involved in both the investigative/charging process and the final decision on the merits." Br. 15. We pause at the outset to note that this claim argues for an exception that falls outside the text of Rule IV(c)(1). That provision is concerned with whether the procedure was so lacking in "notice or opportunity to be heard" as to violate due process. Zdravkovich makes no such claim, nor could he. It is undisputed that he was given notice of the

charges against him, was represented by counsel, and had a hearing at which counsel had the opportunity to call and cross-examine witnesses, make arguments, and submit evidence. Nonetheless, because we would hesitate to impose reciprocal discipline if Maryland's disciplinary system violated due process on some ground other than that contained in the text of Rule IV(c)(1), we proceed to examine Zdravkovich's argument. That examination reveals that the argument has two fatal flaws -- one of fact and one of law.

First, although Zdravkovich is correct that the Maryland Court of Appeals makes the "final decision on the merits," *see* Md. Rule 16-759 (providing that the Court of Appeals reviews exceptions to the findings of fact and conclusions of law prepared by the hearing judge), it is simply not true that the Court "is centrally involved in . . . the investigative/charging process," Br. 15. Under the Maryland Rules, the Court of Appeals appoints Attorney Grievance Commission members, who in turn appoint Bar Counsel, subject to the Court of Appeals' approval. Md. Rules 16-711, 16-712. Bar Counsel investigates professional misconduct, files statements of charges, and prosecutes all disciplinary and remedial actions. Md. Rule 16-712. Upon completion of an investigation, Bar Counsel may file with the Grievance Commission a Statement of Charges. Md. Rule 16-741. A Peer Review Panel reviews statements of charges to determine whether the charges have a substantial basis and to make a recommendation as to whether a Petition for Disciplinary or Remedial Action should be filed. Md. Rules 16-742, 16-743. Finally, if the Grievance Commission directs Bar Counsel to file a Petition, the Court of Appeals designates a Circuit Court judge to hear the action. Md. Rule 16-752. As this description makes clear, the Court of Appeals has no connection to the investigative/charging process other than its role in the appointment of Grievance Commission members and Bar Counsel and in the designation of a hearing

judge -- roles that have no connection to the substance of any particular case.

Second, it would not matter legally even if the Court of Appeals were more involved in the investigative process than it is. In *Withrow v. Larkin*, the Supreme Court expressly rejected the claim that due process is violated where "[t]he initial charge or determination of probable cause and the ultimate adjudication" are made by the same agency. 421 U.S. 35, 58 (1975). "[T]he combination of investigative and adjudicative functions," the Court held, "does not, without more, constitute a due process violation." *Id.* In this case, there is nothing more; there is only less. This is not a case in which "special facts and circumstances [demonstrate] that the risk of unfairness [was] intolerably high." *Id.* To the contrary, there are no such facts or circumstances here.[2]

2. We next consider Zdravkovich's contention that, at most, the evidence supports a charge of negligent rather than intentional misappropriation. To support this contention, Zdravkovich must do more than simply challenge the factfinder's weighing of the evidence. Under the second exception to Rule IV(c), he must demonstrate that there was "such an infirmity of proof" establishing the charge of intentional misconduct "as to give rise to the clear conviction" that accepting the Maryland Court of Appeals' conclusion would be "[in]consistent with [our] duty" as a court. D.C. Cir. Rule IV(c)(2). This is a difficult showing to make, and Zdravkovich has failed to make it.

---

[2]Zdravkovich further maintains that "Maryland Bar Counsel's office engaged in several actions which can be considered misconduct." Br. 16. Even if this charge were true (which does not appear to be the case), nothing Zdravkovich alleges comes close to establishing a due process violation.

Maryland law "distinguishes between the intentional misappropriation of client funds and the misappropriation of client funds resulting from negligent or otherwise unintentional behavior." *Attorney Grievance Comm'n v. Cafferty*, 831 A.2d 1042, 1057 (Md. 2003). Intentional misappropriation includes "conscious indifference in the use and management of the client trust account." *Id.* (internal quotation marks omitted). In this case, there was sufficient evidence from which the Maryland courts could conclude that Zdravkovich intentionally rather than negligently misappropriated Hunter's funds. Hunter hired Zdravkovich to negotiate and complete the purchase of a motorcycle. Shortly thereafter, Hunter gave Zdravkovich $15,552 -- the precise amount that Hunter told Zdravkovich he wanted to pay for the motorcycle -- which Zdravkovich immediately deposited into his attorney trust account. The common sense inference is that Hunter handed over that precise amount because he wanted it to be used to purchase the motorcycle, not to serve as a fund from which Zdravkovich could withdraw payments for legal fees and expenses. *See* Md. Code Ann., Bus. Occ. & Prof. § 10-306 ("A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."). Hunter's testimony -- which Judge Loney found credible -- confirmed that this was the agreement and that it was never modified. The only written document discussing the terms of the representation, Zdravkovich's November 5, 1999 letter to Hunter, contains no evidence to the contrary.

Zdravkovich's subsequent actions confirm that he knew the money was to be used to purchase the motorcycle. Zdravkovich contacted the dealership and offered to pay $15,552 for the vehicle, representing that he had that amount in escrow. When that effort failed, Zdravkovich sought to deposit the full $15,552 with the clerk of the court in which he brought the suit for specific performance. And when Hunter lost patience with the

specific performance case and demanded a complete refund of the $15,552, Zdravkovich "scrambled to add, at the eleventh hour, enough cash to the escrow account to allow him to return Hunter's money to him." *Zdravkovich*, 852 A.2d at 96.

Zdravkovich does not dispute these basic facts, but he does attempt to discredit Hunter's testimony. Zdravkovich contends that Hunter was an unreliable witness because he failed to remember certain facts and gave inconsistent testimony. Zdravkovich further maintains that Hunter's testimony was insufficient to establish intent by clear and convincing evidence, because it contradicted Zdravkovich's testimony that Hunter's girlfriend -- who was, at the relevant time, Zdravkovich's secretary -- told Zdravkovich that Hunter had approved the trust account withdrawals. These arguments are unavailing, however, because this court -- like the Maryland Court of Appeals -- defers to hearing judges' determinations regarding the credibility of witnesses. *See United Servs. Auto. Ass'n v. NLRB*, 387 F.3d 908, 913 (D.C. Cir. 2004). Hunter's girlfriend did not testify, so the only support for Zdravkovich's report of what she told him was Zdravkovich's own testimony. Judge Loney disbelieved Zdravkovich and believed Hunter instead. We have no reason to second-guess the judge's credibility determination.

In sum, Hunter's testimony, combined with the other evidence indicating that Zdravkovich understood that the $15,552 was intended to purchase the motorcycle, was sufficient to support the Maryland court's finding of intentional misappropriation. It is therefore sufficient to warrant the imposition of identical discipline under Rule IV(c)(2).

3. Zdravkovich further maintains that this case falls within Rule IV(c)'s third exception, because "the imposition of the same discipline by this Court would result in grave injustice." D.C. Cir. Rule IV(c)(3). Because he sees his conduct as "at

worst . . . merely negligent," Zdravkovich contends that his disbarment would result in grave injustice. Br. 28.

There might be something to this argument if it were true that Zdravkovich's conduct was merely negligent. This court has declined to automatically impose the reciprocal discipline of disbarment on an attorney whose misappropriation of client funds was not intentional. *See In re Pels*, No. 96-7153, 1998 WL 796430 (D.C. Cir. Oct. 22, 1998). Indeed, the Maryland Court of Appeals, itself, does not generally disbar attorneys for misappropriation that is not intentional, reckless, or dishonest. *See Cafferty*, 831 A.2d at 1057. But as we explained above, there was no infirmity in the finding of the Maryland Court of Appeals that Zdravkovich committed intentional misappropriation. Accordingly, there is no injustice in our imposing reciprocal disbarment for that conduct, especially in light of Zdravkovich's previous reprimand and indefinite suspension.

4. Finally, Zdravkovich insists that his "misconduct warrants substantially different discipline" than that imposed by the Maryland Court of Appeals. D.C. Cir. IV(c)(4). In support, he offers nothing more than the arguments that we have rejected above, plus the contention that "he is extremely unlikely to repeat the same conduct." Br. 34. Given that he was "reprimanded and indefinitely suspended by" the Court of Appeals in a previous case, *Zdravkovich*, 852 A.2d at 96, that promise rings hollow.

III

For the foregoing reasons, we accept the recommendation of the Committee on Admissions and Grievances to impose upon the respondent the reciprocal and identical discipline imposed upon him by the Court of Appeals of Maryland. We

therefore order that Zdravkovich be disbarred from the practice of law before the United States Court of Appeals for the District of Columbia Circuit.  He is prohibited from holding himself out to be an attorney at law licensed to practice before this court.

*So ordered.*